554 So.2d 983 (1989)
GADSDEN PAPER AND SUPPLY COMPANY, INC.
v.
Bobby Joe WASHBURN.
88-342.
Supreme Court of Alabama.
September 29, 1989.
Rehearing Denied December 8, 1989.
*984 Walter J. Sears III and David G. Hymer of Bradley, Arant, Rose & White, Birmingham, and Curtis Wright of Dortch, Wright & Russell, Gadsden, for appellant.
John T. Robertson IV of Henslee, Bradley & Robertson, Gadsden, for appellee.
HORNSBY, Chief Justice.
The defendant, Gadsden Paper Company, challenges certain rulings of the trial court which, it argues, led to a jury verdict and judgment for the plaintiff. The plaintiff stated two counts in his complaint; one for breach of contract and the other for fraud. The jury found against the plaintiff on the breach of contract count but found for the plaintiff on the fraud count and assessed damages against the defendant of $250,000.
The facts supportive of plaintiff, Bobby Joe Washburn's case indicate that Gadsden Paper Company (hereinafter GAPCo) and Washburn entered into negotiations for the purchase of Washburn's business by GAPCo. Washburn had operated the Gadsden Solvent and Supply Corporation as his own business. Negotiations began in early 1984, with GAPCo being represented by Charles Shelby, its general manager. There were several meetings between Shelby and Washburn concerning a possible sale.
*985 On at least one occasion, Washburn and Shelby met with George Cooper, Washburn's accountant. Cooper testified that the negotiations between Shelby and Washburn concerned a sale of the business and not a mere employment agreement. The parties, along with Cooper, allegedly discussed the purchase of such items as good will, accounts receivable, and inventory. Cooper's testimony indicates that Shelby told both Cooper and Washburn that the purchase price would be negotiable. Further testimony indicates that Shelby told both Cooper and Washburn that the purchase price would be paid over two years. Furthermore, he allegedly wanted to work out a deal where Washburn would go to work for GAPCo and would receive compensation in the form of a commission over a period of two years equal to the agreed purchase price.
Cooper was asked at trial if the payment was intended as salary to Washburn for his work as a GAPCo salesman. Cooper testified that Washburn was to receive $72,000 over a period of two years as a part of the sale of the business accounts of Gadsden Solvent. Cooper finally stated that the $72,000 was intended to compensate Washburn for accounts receivable, inventory, and good will.
Washburn and Shelby also met with Bob Lynn, Shelby's superior, and with various customers of Washburn's company, including Jimmy Hill of Goodyear, Faye Chamblee of Mid-South Electronics, and George Cooper, who helped to provide Washburn and Shelby with information as to the value of Washburn's business. There was evidence that, on at least one occasion, Shelby, in the presence of Washburn, inquired of Faye Chamblee and Jimmy Hill whether the business that was being done with Washburn would be given to GAPCo if a sale of the business was consummated. An attempt to formalize the parties' agreement was not made until June 19, 1984, at which time GAPCo gave to Washburn a writing in the form of a letter, which GAPCo now claims to be the final agreement. Washburn contests this characterization of the letter.
That letter is set out in substantial part below:
"Dear Bobby:
"This is to relate in writing the things we discussed and agreed upon related to your becoming an employee of Gadsden Paper & Supply Company.
"(1) You shall cease to operate your business known as Gadsden Solvent & Supply Corporation as of June 25, 1984. You shall, on that date take a physical inventory and sell that inventory to Gadsden Paper & Supply Company at the price you originally paid for the merchandise. Any of this merchandise which has not been sold within six (6) months shall be sold back to you at the same price.
"(2) You shall become a sales representative of Gadsden Paper & Supply Company as of June 25, 1984 subject to the same conditions, rules, benefits, etc. as our other sales representatives. You shall be assigned the same customers and business which you are presently selling and shall retain these accounts so long as reasonable effort is made on your part. It is our intention that you grow with us in sales, that you be assigned as many additional accounts as possible without conflicting with present account assignments. It is also our intention that you emphasize the sale of solvents and gloves to enable us to grow in that area. You shall be compensated using the same commission formula applicable to our other sales personnel. During the first two years beginning June 25, 1984 assuming continued employment, you will receive at the end of each accounting period the commission earned for the period or $2000.00, whichever is greater. At the end of each of the first two years, if you have been paid less than $36,000.00 (gross earnings) you shall be paid the difference between $36,000.00 (gross) and what you were actually paid during the year.
"(3) You do hereby agree not to sell other than as an employee of Gadsden Paper & Supply Company, any of the products which we normally market within a 60 mile radius of Gadsden, Alabama *986 during the period of June 25, 1984 and June 25, 1986.
 "/s/ W. Charles Shelby
 "W. Charles Shelby
 "General Manager
 "DATE: June 20, 1984
"SIGNATURE OF AGREEMENT: /s/
Bobby J. Washburn
"WITNESS: /s/ Wanda Smith"
The record indicates that Washburn and Shelby discussed the letter at some length and that Shelby instructed Washburn to take the agreement home overnight for further study. The letter does not contain any language that could be construed as contemplating a sale of a business, as is alleged by Washburn. Washburn's theory of the case is that he and GAPCo entered into an agreement for the sale of his business at a price of $72,000 to be paid at a rate of $2,000 per month guaranteed and at the end of each of the first two years of the agreement an amount that would raise yearly compensation to a total of $36,000. Washburn testified at trial that when he asked Shelby what would happen if he was terminated before the end of the first two years, Shelby replied that GAPCo would owe Washburn the balance of the $72,000.
Following the execution of the letter agreement, the parties entered into performance. Washburn did in fact act as a sales person for GAPCo, and GAPCo purchased all of Washburn's existing inventory. Washburn does not contest the fact that GAPCo fully performed the agreement for a period of nine months. However, after approximately nine months, GAPCo fired Washburn, allegedly for poor performance.
Washburn claims that GAPCo schemed to defraud him all along. He alleges that GAPCo undertook to induce him to sell GAPCo his business but, through fraudulent means, intended to acquire his business and then fire him without paying for the business.

Fraud
First, did the trial court err when it refused appellant's motion for J.N.O.V. on the fraud claim asserted by Washburn? This action was commenced on July 23, 1985. Because this suit was filed before June 11, 1987, the "scintilla rule of evidence" applies to the case. See § 12-21-12, Code 1975. A "scintilla of evidence" is defined as a mere gleam, glimmer, spark, or trace of evidence. Gross v. Republic Steel Corp., 400 So.2d 383 (Ala. 1981). The plaintiff may defeat a motion for J.N.O.V. by showing so much as a mere scintilla of evidence in support of its complaint. Marion v. Hall, 429 So.2d 937, 943 (Ala.1983).
A motion for J.N.O.V. is really just a reassertion of the motion for directed verdict. It is necessary to the success of a motion for J.N.O.V. that the moving party be entitled to a directed verdict at the close of the evidence. Wilson v. Draper, 406 So.2d 429, 432 (Ala.Civ.App.1981). Moreover, if the nonmoving party has produced so much as a scintilla of evidence, then the motion for directed verdict or J.N.O.V. must be denied. Marion v. Hall, 429 So.2d 937, 943 (Ala.1983).
In Elrod v. Ford, 489 So.2d 534, 537 (Ala.1986), this Court stated the following rules:
"To be entitled to either directed verdict or J.N.O.V., Defendant must have proved to the trial judge that, from the evidence before the court at the time each motion was made, there was `a complete absence of proof on a material issue or [that there were] no controverted questions of fact on which reasonable people could differ,' and that Defendant was entitled to judgment as a matter of law. Deaton, Inc. v. Burroughs, 456 So.2d 771, 773 (Ala.1984). Stated conversely, the motions for directed verdict and J.N.O.V. should not have been granted if reasonable inferences in favor of Plaintiffs' claims could have been drawn from the evidence or if there was any conflict in the evidence for resolution by a jury. O'Donohue v. Citizens Bank, 350 So.2d 1049 (Ala.Civ.App.1977)."
Mere statements of opinion will not suffice as evidence of fraud to induce the signing of a contract. There must be a false assertion of fact that is relied on by the other party. Ray v. Montgomery, 399 So.2d 230 (Ala.1980). The jury could have *987 found that a false assertion of fact had been made to Washburn. There was evidence at trial that Shelby, with the knowledge of his superior, Lynn, negotiated with Washburn for the sale of Gadsden Solvent and that Shelby told Washburn that the contract of employment could end early but that, if it did, GAPCo would owe Washburn the balance up to $72,000.
In a promissory fraud case such as this one, the plaintiff has the burden of proving that the defendant, at the time he made his promise, had no intent to perform it. Green Tree Acceptance, Inc. v. Doan, 529 So.2d 201, 205 (Ala.1988). The plaintiff must show that the defendant did more than fail to perform his promise, because failure to perform alone is not sufficient evidence to show a present intent not to perform. Purcell Co. v. Spriggs Enter., Inc., 431 So.2d 515, 519 (Ala.1983). If it were, then every breach of contract would be "tantamount to fraud." Id. See also Old Southern Life Ins. Co. v. Woodall, 295 Ala. 235, 326 So.2d 726 (1976). Although intent is generally a question of fact for the jury, the jury may not speculate as to the existence of intent. Purcell, 431 So.2d at 519.
Contrary to the defendant's assertions, we find that there was sufficient evidence of present intent not to perform to warrant a submission of the case to the jury. Washburn testified that when he discussed the agreement with Shelby, Shelby gave assurances that GAPCo would fully compensate Washburn for the sale in the event that he was terminated before the first two years of the agreement expired. Furthermore, Washburn testified that he and Shelby did not discuss a transfer of the business for less than $72,000. When asked what the $72,000 was for, Washburn stated that it was compensation for the accounts and business that he would bring to GAPCo.
Furthermore, there was evidence that Shelby and Washburn paid visits to Washburn's customers in order that GAPCo could be assured of continuing business with those customers and that those customers were informed by Shelby that GAPCo wanted to buy out Washburn's business. There was also evidence in the record to indicate that when GAPCo had expanded in the past it had done so by acquiring smaller companies and had absorbed those company's employees.
Washburn further testified that he was assigned old and bad accounts to work. He also stated that he was forced to share the good accounts that he had brought with him with other sales people. Washburn claims that these circumstances indicate a carefully planned "set-up" whereby GAPCo would acquire the business of Gadsden Solvent, Washburn's Company, and then dismiss Washburn without paying for the business. As might be expected, GAPCo countered with the argument that the parties had never contemplated a sale of the business at all, but that only an agreement for employment was contemplated. Thus, a conflict in the evidence is apparent.
There was also evidence in the record to indicate that Bobby Washburn was treated differently from regular sales employees. There was evidence that he was assigned only delinquent and old accounts, that he was the only sales employee forced to keep time records and call reports, and that he was also detailed to work in the GAPCo warehouse, although the letter-agreement made no mention of such duties.
The trial judge, in ruling on the defendant's motion for directed verdict at the close of the plaintiff's case, stated that much of the proof rested in circumstantial evidence of the present intent not to perform. However, the trial judge did find that Washburn had produced at least a scintilla of evidence on the fraud claim. We agree.

Parol Evidence
GAPCo next contends that the evidence submitted regarding the oral negotiations and agreements with Shelby and other persons improperly modified or varied the agreement of the parties as it was written. GAPCo contends that the parties reduced their agreement to a writingthe letter of June 19, 1984. Thus, the argument goes, the agreement may not be varied or contradicted by extrinsic evidence of prior or contemporaneous statements outside the written agreement. This argument is based on the "parol evidence rule."
*988 Under that rule of evidence, a written document made by parties who intend that document to be the exclusive evidence of their agreement may not be contradicted or varied by evidence of prior or contemporaneous oral or extrinsic agreements. Alabama Power Co. v. Pierre, 236 Ala. 521, 183 So. 665 (1938). It has become apparent, however, that the exceptions to this rule are numerous. Parker v. McGaha, 294 Ala. 702, 321 So.2d 182 (1975). Most importantly, "[e]vidence of fraud is always admissible, even though there is a completely integrated instrument." Id. 294 Ala. at 707, 321 So.2d at 185.
Because of the allegations of promissory fraud, we find no error in the jury's consideration of extrinsic evidence.

Evidence of Gross Sales
Finally, GAPCo contends that the trial court committed reversible error in admitting into evidence certain documents and summaries evidencing increased gross sales of GAPCo following termination of Washburn. The defendant, GAPCo, argues in its brief that review of this question is controlled by the "abuse of discretion rule," i.e., that the trial judge may admit such evidence in his wise discretion so long as that discretion is not abused. Williams v. Tyler, 340 So.2d 20 (Ala.1976).
There is authority in the cases to support the proposition that evidence may be excluded by the trial judge if its prejudicial effect outweighs its probative value. Faith, Hope & Love v. First Alabama Bank, 496 So.2d 708 (Ala.1986). However, it is equally true that in fraud cases the plaintiff is allowed wide latitude as to the proof he may submit into evidence. Old Southern Life Ins. Co. v. Woodall, 348 So.2d 1377 (Ala.1977). Here, the evidence of sales by GAPCo could be used to show a reason for GAPCo's wanting to take over Washburn's business. The evidence, thus, could also be circumstantial evidence of a present intent to misrepresent GAPCo's intentions. The probative value of this evidence may, however, seem slight.
This Court in Mid-State Homes, Inc. v. Johnson, 294 Ala. 59, 63, 311 So.2d 312 (1975), stated the following rules with regard to the admission of evidence of fraud:
"Great latitude is allowed in admitting evidence on the issue of alleged fraud. May v. Strickland, 235 Ala. 482, 180 So. 93 [ (1938) ]; National Surety Co. v. Julian, 227 Ala. 472, 150 So. 474 [ (1933) ]. Most often the perpetrator of fraud is the sole possessor of actual knowledge of such fraud. Undue restriction should not be placed on the introduction of evidence which has probative value, however slight, on this issue. Weight is for the jury."
The record in this cause discloses that the sales evidence was admitted on the issue of fraud and not on the issue of damages. Furthermore, the trial judge gave instructions to the jury that limited the use of this evidence and specifically denied the jury its use in calculating damages. Had this evidence been admitted on the issue of damages, however, a different result may obtain. See, e.g., Southern Life & Health Ins. Co. v. Whitman, 358 So.2d 1025, 1027 (Ala.1978).
Based upon the foregoing, we can not say that this evidence was wrongly admitted in this case.
The trial court's judgment is due to be affirmed.
AFFIRMED.
JONES, SHORES, ADAMS and KENNEDY, JJ., concur.
MADDOX and HOUSTON, JJ., dissent.
MADDOX, Justice (dissenting).
While I agree that "[o]rdinarily intent is a matter ... within the province of the trier of facts," we have held that "the jury has no untrammeled discretion to speculate upon the existence of fraudulent intent" and that "[a]ny finding on the issue must be based on reasonable inferences from the evidence, and intent to defraud must be clearly proved by a preponderance of the evidence." Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515, 519 (Ala.1983) (emphasis added.)
In Purcell, a case in which a jury had awarded plaintiff $1,000,000, this court reversed *989 and rendered a judgment for the defendant.
The majority concedes that the agreement was one for employment, yet it permits parol evidence to prove alleged representations concerning matters not included in the agreement. Even assuming that the parol evidence rule did not apply, the evidence presented was insufficient for the jury to infer a fraudulent intent. That is evidenced by the fact that the jury awarded plaintiff no compensatory damages for breach of contract.
In any event, it is clear to me that the fraud claim was not "clearly proved by a preponderance of the evidence." Purcell Co., supra; Hearing Systems, Inc. v. Chandler, 512 So.2d 84 (Ala.1987).
HOUSTON, Justice (dissenting).
I dissent, on authority of Russellville Production Credit Ass'n v. Frost, 484 So.2d 1084 (Ala.1986); Hearing Systems, Inc. v. Chandler, 512 So.2d 84 (Ala.1987); and Purcell Co. v. Spriggs Enterprises, Inc., 431 So.2d 515 (Ala.1983).