General Motors Acceptance Corporation (hereinafter "GMAC") appeals from the trial court's judgment on a jury verdict in favor of Gerald Covington on his counterclaim alleging misrepresentation. The jury assessed compensatory damages in the amount of $25,000 and punitive damages in the amount of $50,000. We affirm.
This case arises out of the following facts:
On November 12, 1985, Gerald Covington purchased a 1986 Pontiac Trans Am automobile from Frank Lawrence Pontiac-Cadillac Company. At the time he purchased the vehicle, Covington executed a "retail installment sales contract," by which he financed the purchase price of the automobile. Frank Lawrence Pontiac-Cadillac assigned the retail installment sales contract to GMAC. Covington thereby became indebted directly to GMAC under the contract. Both parties were aware at the time of purchase that GMAC would actually finance the purchase of the car, and that the installment sales contract would be assigned to GMAC. Covington was also advised that it would be necessary for him to obtain and keep insurance coverage on the car.
The car was apparently purchased for Covington's son, who intended to take the car to Kansas, where he attended college. Shortly after the purchase, Covington obtained insurance on the car from the Johnson Agency. Within three months, Covington allowed the insurance to lapse for nonpayment of premiums. Covington testified that he could not afford the $2,300 premium. The portion of the sales contract concerning insurance provided in part:
 "You agree to have physical damage insurance covering loss or damage to the vehicle for the term of this contract. At any time during the term of this contract, if you do not have physical damage insurance which covers both the interest of you and the creditor in the vehicle, then the creditor may buy it for you. . . . The creditor is under no obligation to buy any insurance but may do so if it desires. If the creditor buys either of these coverages, it will let you know what type it is and the charge you must pay. . . ."
In January 1986, GMAC notified Covington that his insurance had been canceled and advised him that it was necessary for him to purchase additional insurance as required by the sales contract. At that time, Covington requested assistance from GMAC in obtaining insurance through Motors *Page 180 
Insurance Corporation. On February 25, 1986, Covington was notified by GMAC that it would be unable to purchase insurance for him through Motors Insurance Corporation. Covington then telephoned Mrs. Margaret Oliver at GMAC's office in Gadsden, and inquired about purchasing "single interest" insurance. At the time he purchased the car, the concept of single interest insurance was explained to Covington by the salesman. According to Covington, Ms. Oliver stated that she would "take care of it." Ms. Oliver was not an insurance agent and did not sell insurance, but simply would forward the application to the insurance company. The single interest insurance is designed to protect the creditor, not the owner of the vehicle, in the event of loss or damage. GMAC's practice was that the customer paid for the single interest insurance in one of three ways; a cash payment for the entire premium, increased monthly payments extended over the life of the car loan, or collecting the premiums plus any interest due at the end of the debtor's loan. GMAC, as a practice, did not automatically add or purchase single interest insurance. However, the customer could request that it be added. Furthermore, as provided in the sales contract, GMAC retained the right to purchase the single interest insurance if it so desired. This alleged conversation with Ms. Oliver was the only conversation Covington had with any GMAC representative concerning the single interest insurance, or any other insurance for that matter.
Although Covington was aware that his car payments could increase if the single interest insurance were added, his payments never increased. Covington never received a policy for the single interest insurance, made no payments, and received no notices regarding the insurance. Nevertheless, Covington did not contact any GMAC representative concerning the status of his insurance coverage.
Ms. Oliver testified that it was the practice of GMAC not to purchase single interest insurance unless GMAC received a written request from the customer. According to Ms. Oliver, because no written request was ever received from Covington, no single interest insurance was purchased.
Covington continued to make the payments on the automobile until April 1987, when the car was stolen from the college campus in Kansas. When he learned of the theft, Covington reported it to Mr. Estis of GMAC. Shortly thereafter, Covington learned that there was no single interest coverage on the car. As a result, he made no further payments on the car after the theft. Covington's reason for making no further payments on the car was that he intended to go to Kansas and investigate the theft.
On September 15, 1987, GMAC sued Covington for a deficiency balance owed on the installment sales contract. On November 6, 1987, Covington filed an answer and a counterclaim, alleging that GMAC, through Ms. Oliver, had misrepresented to him that single interest insurance would be purchased for him. GMAC subsequently filed a motion to dismiss the counterclaim and a motion for a summary judgment. On August 15, 1988, the circuit court entered a judgment granting GMAC's motion to dismiss Covington's counterclaim and its motion for a summary judgment on the deficiency balance owed on the installment contract, entering a judgment against Covington in the amount of $13,974.88, plus costs.
On September 8, 1988, Covington filed a pro se motion for "reconsideration" and/or "rehearing." Covington contended that he had not been adequately represented during the summary judgment hearing. On December 8, 1988, the court entered an order setting aside the order dismissing Covington's counterclaim. The court left intact the judgment in favor of GMAC on the original deficiency claim.
In his counterclaim, Covington sought $7,855.68 in actual damages and $65,000 in punitive damages. The case proceeded to trial, essentially on the sole issue of whether the misrepresentation was made. At the close of the evidence, the case was submitted to the jury after the judge had denied GMAC's motion for a directed verdict. Upon the denial of the directed verdict, Covington sought to amend his complaint *Page 181 
in order to withdraw his request for a specific amount of punitive damages and to substitute an amount that the jury might award. The court allowed the amendment. Covington made no request to change the amount of compensatory damages he sought.
The jury found in favor of Covington on his claim of misrepresentation and assessed compensatory damages in the amount of $25,000 and punitive damages in the amount of $50,000. The court thereafter entered a judgment on this verdict. GMAC's motion for a JNOV and its alternative motion for a new trial were denied.
On appeal, GMAC raises the following issues: (1) whether the trial court erred in failing to direct a verdict in its favor on Covington's fraud count — in that regard, GMAC contends that Covington presented no evidence of the elements of promissory fraud sufficient to go to the jury, and that there was no evidence of justifiable reliance or of intent to deceive at the time of the alleged misrepresentation; (2) whether the jury's verdict awarding compensatory damages of $25,000 was supported by the evidence, was excessive, and exceeded the amount requested by Covington in his counterclaim and the amount set forth in the court's pretrial order; and (3) whether the jury's award of punitive damages in the amount of $50,000 was supported by the evidence presented at trial — in this regard, GMAC contends that there was no evidence of gross, malicious, or oppressive conduct on the part of GMAC to support an award of punitive damages.
GMAC first argues that Covington did not present sufficient evidence of promissory fraud for that claim to be submitted to the jury. Specifically, GMAC argues that because the alleged misrepresentation made by Ms. Oliver that she "would take care of it" was a promise to do some act in the future, Covington not only must establish the elements of fraud, but also must prove that the promisor, at the time of the alleged misrepresentation, did not intend to do the act promised and had an intent to deceive. GMAC also argues that Covington did not establish the element of reliance. GMAC argues that Covington did not prove the required elements of fraud or promissory fraud and therefore that GMAC was entitled to a directed verdict. We disagree.
At the outset, we point out that in order for Covington's claim of misrepresentation to be submitted to the jury, he must present "substantial evidence." Ala. Code 1975, § 12-21-12(a). Substantial evidence is defined as:
 "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved."
West v. Founders Life Assurance Co. of Florida, 547 So.2d 870,871 (Ala. 1989).
We note that the alleged misrepresentation made by Ms. Oliver was clearly a promise to do some future act, to purchase single interest insurance, because Covington said she stated that she "would take care of it." Therefore, in order for Covington to have his claim submitted to the jury, he must present substantial evidence of all of the elements of fraud, as well as the two added requirements of promissory fraud.
In order to prove a claim of fraud, the plaintiff must present substantial evidence that there was: (1) a false representation; (2) of a material existing fact; (3) that he justifiably relied upon it; and (4) that he was damaged as a proximate result. If a fraud claim is based upon a promise to do some act in the future, as it is here, then Covington has the added burden of proving the additional elements that; (1) the promisor, at the time of the alleged misrepresentation, did not intend to do the act promised; and (2) that the promisor, at that time, had an intent to deceive. Benetton Services Corp.v. Benedot, Inc., 551 So.2d 295 (Ala. 1989). See also PurcellCo. v. Spriggs Enterprises, Inc., 431 So.2d 515 (Ala. 1983).
With respect to the basic elements of fraud, GMAC argues that Covington has not established the element of reliance. In proving fraud, the plaintiff must establish that he "justifiably" relied on the alleged *Page 182 
misrepresentation, under the new standard set out in Hickox v.Stover, 551 So.2d 259 (Ala. 1989), in which this Court stated:
 "In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
 " '[r]eliance should be assessed by the following standard: A plaintiff given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth." ' "
Hickox, 551 So.2d at 263 (quoting Southern States Ford, Inc. v.Proctor, 541 So.2d 1081, 1091-92 (Ala. 1989). See also Dixon v.SouthTrust Bank of Dothan, 574 So.2d 706 (Ala. 1990); Grimes v.Liberty National Life Ins. Co., 551 So.2d 329 (Ala. 1989).
GMAC argues that because Covington made no inquiries as to the single interest insurance after the alleged conversation with Ms. Oliver, and the fact that he knew his monthly payments did not increase, he cannot be said to have justifiably relied on Ms. Oliver's alleged representation. We disagree. An examination of the record reveals that there was substantial evidence to support a finding that Covington justifiably relied on Ms. Oliver's alleged representation.
Although it may be true that Covington made no further inquiries into the purchase of single interest insurance after his conversation with Ms. Oliver, it appears that he had no reason to question whether the single interest insurance was purchased, because he never received notice from GMAC that the vehicle did not have adequate insurance. Furthermore, it was the policy of GMAC not to send a policy or a copy of a policy to the customer, because the single interest insurance was primarily for the benefit of GMAC. Last, the fact that Covington's monthly payments did not increase is not dispositive of the question whether the single interest insurance was purchased. An increase in the monthly payments was only one way GMAC could charge the customer for the insurance. Covington could justifiably have assumed that GMAC had decided to use one of the other methods of payment, namely, charging him for the entire premium or collecting the premiums, plus interest, at the end of the loan. The evidence presented indicates that the misrepresentation in this case is not one so patently and obviously false that Covington had to close his eyes to avoid the discovery of the truth. We hold, therefore, that there was sufficient evidence presented to create a jury question as to whether Covington justifiably relied on the alleged representation, and the trial court properly submitted the case to the jury.
GMAC argues further, assuming, arguendo, that Covington has established the element of reliance, that he failed to establish the two added elements of promissory fraud, namely, that the misrepresentation was made with the present intent to deceive, and that at the time of the misrepresentation the promisor intended not to perform. To the contrary, the record again reveals that Covington presented substantial evidence that Ms. Oliver intended to deceive him and intended not to perform the promise to purchase single interest insurance.
With respect to the element of promissory fraud requiring that the promisor must have acted with the present intent to deceive, Ms. Oliver testified that the only way she could apply for single interest insurance was for a customer to make a written request. Thus, when she made the alleged statement that she "would take care of it" she knew, in fact, that she could not apply for the insurance at that time. Nevertheless, Ms. Oliver apparently did not inform Covington of the GMAC policy of requiring a written request for single interest insurance and there was evidence that she stated that she "would take care of it" when, in actuality, she could not "take care of it."
With respect to the second element of promissory fraud, that the promisor have, *Page 183 
at the time the representation is made, a present intent not to perform, the record again reflects that Covington presented sufficient evidence to warrant submission to the jury. Contrary to GMAC's argument that this case involves a mere failure to perform, Ms. Oliver's testimony reflects that she never intended to perform the promise to "take care of" the purchase of single interest insurance. Ms. Oliver testified:
 "Q. All right. So, you never formed an intent to bind it in the present or to bind it in the future, did you? You never had that intent, did you?
"A. No, sir."
Ms. Oliver's testimony indicates that, although there was evidence that she stated that she would take care of the purchase of single interest insurance, at the time she made the promise she had no intent to actually purchase the insurance for Covington's car. We conclude, therefore, that Covington presented sufficient evidence that Ms. Oliver intended, at the time of the alleged statement, to deceive him, and intended not to perform the promise to purchase the insurance. That evidence warranted submission of Covington's claim of promissory fraud to the jury.
GMAC also argues that the compensatory damages award of $25,000 is excessive and is not supported by the record, and that the punitive damages award of $50,000 was improper because, it says, there was no evidence of gross, willful, or oppressive conduct by GMAC that would justify such an award. With respect to the compensatory damages award, GMAC bases its argument primarily on the fact that Covington sought in his pleadings to recover only $7,855.68. The verdict forms given to the jury in the trial court's oral charge read as follows:
 "If after a full and fair consideration of all the evidence in this case you are satisfied that the plaintiff should recover from the defendant in this case, then you would use the form of the verdict which reads as follows: 'We, the jury, find the issues in favor of Gerald Covington on his claim against GMAC, and assess the damages as follows: blank dollars compensatory damages, blank dollars punitive damages.' . . . . If you determine that the plaintiff is to recover compensatory damages but not punitive damages, you would enter zero in the space for punitive damages.
 "If you find, however, after a full and fair consideration of all the evidence in this case that the plaintiff should not recover from the defendant on his claim, on Mr. Covington's claim, then you would use the form of the verdict which reads, 'We, the jury find the issues in favor of GMAC on the claim by Gerald Covington.' "
Contrary to GMAC's argument, an amount of recovery requested in the pleadings does not prohibit the jury from awarding the plaintiff what it views as an appropriate award based on the facts and evidence presented. The jury is entitled to award an amount that it sees fit to award based on what is proved at trial, rather than what is pleaded. Rule 54(c).
Furthermore, after the court's charge was read to the jury, GMAC made no objection to the charge on compensatory damages. Thus, in that regard, GMAC has not preserved any error for the record, as it made no objection to the charge before the jury retired to deliberate the case. As stated in Rule 51, A.R.Civ.P.:
 "No party may assign as error the giving or failing to give a written instruction, or the giving of an erroneous, misleading, incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection."
See Cooper v. Bishop Freeman Co., 495 So.2d 559 (Ala. 1986).
With respect to the trial court's charge regarding punitive damages, GMAC made the following objection:
 "Judge, we would except to the charges. I don't have anything numbered in front of me, but I think for the record in essence I take exception to the charge concerning willful and intentional misrepresentation, and the charge of the *Page 184 
Court as to reckless misrepresentation and to the charge as to punitive damages, but I do not except to the other charges."
As mentioned above, Rule 51 requires parties, in objecting to the court's charge, to state the matter to which they object and the grounds for the objection. GMAC, in its general objection to the portion of the court's charge concerning punitive damages, stated no grounds for the objection and, thus, did not properly preserve the question for appellate review. Furthermore, we disagree with GMAC's argument that the evidence presented does not support the punitive damages award.
As discussed above, an examination of the record reveals that Covington presented sufficient evidence of the elements of promissory fraud to create a jury question, and it was such that the jury could reasonably infer that Covington was defrauded by Ms. Oliver's representation. Given the fact that there was sufficient evidence of both elements of promissory fraud — a present intent to deceive and an intent not to perform the promise — the question of punitive damages was properly submitted to the jury. Carnival Cruise Lines, Inc. v.Goodin, 535 So.2d 98 (Ala. 1988). Therefore, the jury, in finding in favor of Covington on his claim of misrepresentation, was justified in awarding punitive damages in an amount that it saw fit to award.
For the reasons set out in this opinion, the judgment entered on the jury verdict awarding damages to Covington on his claim of misrepresentation is affirmed.
AFFIRMED.
HORNSBY, C.J., and INGRAM, J., concur.
ALMON and STEAGALL, JJ., concur in the result.