595 So.2d 873 (1992)
ALLSTATE INSURANCE COMPANY
v.
James Larry HILLEY and Robbie Hilley.
1901762.
Supreme Court of Alabama.
March 20, 1992.
*874 Sterling G. Culpepper, Jr. and William P. Cobb II of Balch & Bingham, Montgomery, and Curtis C. Wright of Dortch, Wright & Russell, Gadsden, for appellant.
Larry W. Morris and Kenneth F. Ingram, Jr. of Morris, Haynes & Ingram, Alexander City, and Donald R. Rhea of Rhea, Boyd & Rhea, Gadsden, for appellees.
HORNSBY, Chief Justice.
Allstate Insurance Company ("Allstate") appeals from a $2,000,000 judgment entered on a jury verdict in favor of James Larry Hilley and Robbie Hilley, based on the Hilleys' claim of fraudulent misrepresentation. In Hilley v. Allstate Ins. Co., 562 So.2d 184 (Ala.1990), this Court affirmed the trial court's summary judgment in favor of Allstate on the Hilleys' claims of breach of contract, outrageous conduct, bad-faith refusal to pay, and violation of public policy. The trial court had denied Allstate's motion for a summary judgment as to the Hilleys' fraudulent misrepresentation claim. Allstate raises four issues on appeal: (1) whether the Hilleys' fraud claims are supported by the evidence and the law; (2) the propriety of the general verdict; (3) whether the trial court erred in admitting evidence relevant to issues previously decided by this Court upon the Hilleys' appeal; and (4) whether the award of damages was excessive or otherwise improper.
In our opinion addressing the Hilleys' appeal from the summary judgment in favor of Allstate, we stated the facts of this controversy as follows:
"On July 24, 1985, the Hilleys purchased a deluxe homeowner's insurance policy from Allstate with coverage and limits of liability of $38,000 for dwelling protection and $19,000 for personal property protection. Thereafter, on January 6, 1986, the Hilleys' home and their personal contents were destroyed by fire. Subsequently, the Hilleys contacted Allstate and Ben Frazier, senior claims representative with Allstate, to make a claim for the loss caused by the fire. On January 29, 1986, the Hilleys filed a sworn `proof of loss' form with Allstate. At that point, the Hilleys received approximately $14,000 for the loss of the contents and approximately $13,000 for the actual cash value of their house. Then, if they chose, they could replace or rebuild their house, and, within 180 days, make an additional claim for the amount by which their cost of rebuilding or replacing the house exceeded the actual cash value of the house. The draft for $13,000 was made payable to the Hilleys and to the finance company holding the mortgage. After paying off the mortgage debt, the Hilleys had approximately $3,000 of the $13,000 remaining.
"After the fire, the Hilleys stayed with a relative for approximately one month until they moved into a 2-bedroom apartment, where they remained for approximately four to five months. They then rented a trailer, which they parked on a lot that they owned.
"During this period, Frazier paid the Hilleys $570 for additional living expenses, along with $1,000 for `humanitarian *875 needs' and $1,050 for clean-up and debris removal costs.
"After the loss, the Hilleys sought to obtain the best price to rebuild approximately the same house that had been destroyed by fire. They also attempted to obtain loans from various financial institutions to finance the rebuilding of their house, but their requests were denied. On May 26, 1986, the Hilleys' attorney wrote Frazier concerning the Hilleys' inability to obtain financing for their home and seeking reimbursement for additional living expenses that the Hilleys had incurred.
". . . .
"A few days later, Frazier wrote the Hilleys, acknowledging receipt of their letter and stating that Allstate's agreement under the dwelling coverage provision of the policy was as follows: `[W]hen the amount already paid to the insured is spent toward the rebuilding of the house and cost of rebuilding begins to exceed this amount that I would pay a portion of the remaining amount and later pay another portion when the house was at a stage toward completion and could be verified. If this is not acceptable the only offer I can make is according to the policy conditions in the policy.'
"Frazier's letter also rejected the Hilleys' request for additional living expenses.... With regard to the Hilleys' request that Allstate guarantee the additional monies due under the policy to the construction company that had agreed to rebuild their home, Frazier's response read as follows:
"`In regards to the second paragraph of your letter regarding Allstate Guarantee to Construction Company, we do not have a contract with the construction company only with the insureds.'"
Hilley, 562 So.2d at 186-87 (emphasis added in first opinion).
The Hilleys' fraud claim is based on an Allstate agent's representation that, in the event of a fire, Allstate would rebuild the Hilleys' house, replace their house, or pay them the $38,000 that Allstate assessed as the market value of their house. Allstate, of course, elected none of these options after the Hilleys lost their house. The Hilleys' complaint alleged that "instead [Allstate] offered and paid only $11,000 on the personal property protection and further only paid $14,050 on the dwelling coverage, which according to the defendant was the actual cash value of the property plus clean up and debris removal." Allstate contends that the policy in effect at the time of the Hilleys' loss required the Hilleys to commence rebuilding the house within 180 days after the loss in order to be entitled to any amount over the actual cash value of their house.

I. Whether the Hilleys' fraud claims are supported by the evidence and the law.
Allstate contends that neither the evidence nor the law supports the Hilleys' fraud claims. Allstate primarily argues that the alleged fraud is in the nature of promissory fraud, and, therefore, that the trial court erred in instructing the jury as to the elements of legal fraud, but not promissory fraud.
Initially, we note that because this action was pending on June 11, 1987, the "scintilla rule" is applicable. "[T]he scintilla rule requires that issues in civil cases must go to the jury if the evidence, or a reasonable inference therefrom, furnishes a glimmer or trace in support of an issue." Alabama Farm Bureau Mut. Casualty Ins. Co. v. Haynes, 497 So.2d 82, 85 (Ala.1986). Because we believe that this rule was satisfied in this case, we cannot say that the trial court erred in submitting the Hilleys' fraud claims to the jury.
In General Motors Acceptance Corp. v. Covington, 586 So.2d 178 (Ala.1991), this Court enumerated the elements that must be satisfied in order to prove a claim of fraud: "(1) a false representation; (2) of a material existing fact; (3) that [the plaintiff] justifiably relied upon; and (4) that [the plaintiff] was damaged as a proximate result." Id. at 181. We further stated:
"If a fraud claim is based upon a promise to do some act in the future, ... then [the plaintiff] has the added burden of *876 proving the additional elements that[:] (1) the promisor, at the time of the alleged misrepresentation, did not intend to do the act promised; and (2) that the promisor, at that time, had an intent to deceive."
Id. Allstate contends that the Hilleys failed to prove the additional elements of promissory fraud. We do not believe the Hilleys were required to do so.
A promissory fraud claim is "one based upon a promise to act or not to act in the future." Padgett v. Hughes, 535 So.2d 140, 142 (Ala.1988). The Hilleys' fraud claim arises from the Allstate agent's representation that, in the event their house was destroyed by fire, Allstate would either rebuild the house, replace the house, or pay the Hilleys the $38,000 that Allstate assessed as the market value of their house.[1] This statement is a representation of the insurance coverage that the Hilleys were purchasing. The statement was not a promise to act in the future. It was, rather, represented to the Hilleys as a present fact of Allstate's obligations under the insurance policy. Therefore, the trial court did not err in refusing to instruct the jury as to the additional elements of promissory fraud.
The only argument with regard to legal fraud that Allstate makes concerns the element of justifiable reliance. Allstate argues that the Hilleys failed to produce any evidence that they justifiably relied on the agent's representation that the market value of their house was $38,000. We disagree. In Hickox v. Stover, 551 So.2d 259 (Ala.1989), we stated:
"In light of modern society's recognition of a standard of business ethics that demands that factual statements be made carefully and honestly,
"`[r]eliance should be assessed by the following standard: A plaintiff, given the particular facts of his knowledge, understanding, and present ability to fully comprehend the nature of the subject transaction and its ramifications, has not justifiably relied on the defendant's representation if that representation is "one so patently and obviously false that he must have closed his eyes to avoid the discovery of the truth."'"
Id. at 263 (quoting Southern States Ford, Inc. v. Proctor, 541 So.2d 1081, 1091-92 (Ala.1989) (Hornsby, C.J., concurring specially)). We do not believe that the Allstate agent's representation at issue was "one so patently and obviously false that [the Hilleys] must have closed [their] eyes to avoid the discovery of the truth," and we, therefore, hold that the jury could have reasonably found that the Hilleys justifiably relied on the agent's representation.
In effect, Allstate is asking how the Hilleys could have believed their house was worth as much as Allstate's own agent represented. The Hilleys were entitled to rely, and justifiably, on the assumption that the agent was using his knowledge of the real estate market in the Gadsden area in assessing the market value of the Hilleys' house. Moreover, there was evidence that the year before the Hilleys purchased the house, the property had been appraised at $21,000. Thereafter, but before the Allstate agent assessed the market value of the house, Mr. Hilley made $8,000 to $10,000 worth of improvements. Finally, Mr. Hilley testified that the agent told him that his house was one of the nicer houses in the neighborhood. We believe that these factors are of such a character that the Hilleys could have justifiably relied on the agent's representation as to the market value of their house.

II. The propriety of the general verdict.
Allstate claims that the jury's general verdict was improper because, it argues, one of the Hilleys' fraud claims was submitted to the jury without any supporting evidence. Specifically, Allstate focuses on the Hilleys' allegation that Allstate represented that it would fully cooperate with *877 the Hilleys in repairing the house and that the Hilleys would be kept comfortable. Allstate argues that it was entitled to a directed verdict on this claim because, Allstate says, it was not supported by any evidence. Therefore, Allstate asserts that the general verdict may not stand because an unsupported fraud claim was presented to the jury.
The only theory submitted to the jury was fraudulent misrepresentation. This was not a "multiple-theory case." See King Mines Resort, Inc. v. Malachi Mining & Minerals, Inc., 518 So.2d 714, 716 (Ala.1987). In the present case, we cannot say that "it is impossible to know on which of the multiple theories the jury based its verdict." Id. at 716. Therefore, we agree with the Hilleys that because there was only one theory submitted to the jury, the jury properly returned a general verdict.

III. Whether the trial court erred in admitting evidence relevant to issues previously decided by this Court upon the Hilleys' appeal.
In Hilley v. Allstate Ins. Co., 562 So.2d 184 (Ala.1990), this Court affirmed the trial court's summary judgment in favor of Allstate on the Hilleys' claims of breach of contract, outrageous conduct, bad-faith refusal to pay, and violation of public policy.[2] Allstate contends that the trial court erred in admitting evidence that it says was relevant only to the breach of contract and bad faith claims upon which this Court had previously affirmed the summary judgment. The claimed error concerns evidence of Allstate's cancellation of the Hilleys' policy after the Hilleys had failed to rebuild their house within six months, Allstate's failure to pay the Hilleys' additional living expenses, and Allstate's refusal to guarantee payment of the replacement cost balance to a contractor of the Hilleys' choice. Allstate argues that the submission of evidence relating to these events prejudiced the jury.
In Sessions Co. v. Turner, 493 So.2d 1387 (Ala.1986), this Court stated:
"The trial court has wide latitude in regard to testimony in fraud cases because often the perpetrator is the sole possessor of the actual knowledge of the fraud. The trial court's rulings will not be disturbed on appeal unless that discretion has been abused."
Id. at 1391 (citations omitted). See also Gadsden Paper & Supply Co. v. Washburn, 554 So.2d 983, 988 (Ala.1989) (although "evidence may be excluded by the trial judge if its prejudicial effect outweighs its probative value[,] ... it is equally true that in fraud cases the plaintiff is allowed wide latitude as to the proof he may submit into evidence"); Dorcal, Inc. v. Xerox Corp., 398 So.2d 665, 671 (Ala.1981) ("questions of materiality, relevancy and remoteness [in a fraud case] rest largely within the discretion of the trial court" and "its ruling concerning relevancy must not be disturbed on appeal unless such discretion had been grossly abused").
We conclude that the evidence in question was relevant not only to the claims previously addressed by this Court upon the Hilleys' appeal, but also to the Hilleys' fraudulent misrepresentation claim. The fact that this Court had previously affirmed a summary judgment in favor of Allstate on the Hilleys' claims other than fraud did not preclude the trial court from recognizing that evidence relevant to the previously decided claims was also relevant to the Hilleys' fraud claim. The trial court did not abuse its discretion in ruling that evidence of various actions taken by Allstate *878 was relevant to the Hilleys' claim that Allstate fraudulently misrepresented the respective obligations of Allstate and the Hilleys under the insurance contract.

IV. Whether the award of damages was excessive or otherwise improper.
Allstate contends that the $2,000,000 damages award rendered against it is excessive and is the result of bias, passion, prejudice, or other improper motive. The trial court entered the following order after its hearing conducted pursuant to Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986):
"This cause, coming on to be heard ore tenus on the 8th day of July, 1991 on Allstate Insurance Company's motion for judgment notwithstanding the verdict or, in the alternative, for a new trial (`post-trial motion') and its motion to conduct a Hammond hearing and after hearing and weighing argument of counsel, the Court finds as follows:
"This is a fraud claim based on misrepresentation and concealment by Defendant Allstate through its agent Dan Phillips. Mr. Hilley testified that at the time of the application, Phillips informed him `in the event my house burns, they (Allstate) would rebuild my home or they would find me a replacement or they would pay me the market value of my home of $35,000.' What Allstate concealed from Plaintiff was that he first must obtain construction financing on his own to rebuild or at least get the house `in the dry' before Allstate would pay Mr. Hilley. It is not disputed that Hilley attempted to obtain financing at least at two financial institutions but to no avail. Consequently, Allstate refused to pay him, as represented to him by Phillips, and Hilley suffered a twenty-five thousand dollar loss because of his inability to obtain financing. The jury justifiably found that Phillips misrepresented and concealed the extent of coverage in order to induce Hilley to purchase the insurance. Additionally, there was testimony by Allstate that twenty to twenty-five percent of other homeowner insureds do not or cannot rebuild their homes after loss. While Plaintiff failed to produce [evidence as to] how many of the twenty to twenty-five percent could not obtain financing to rebuild, Allstate did admit that this situation arises often and they handle those situations in the same manner as in this case. There was sufficient evidence for the jury to find that the misrepresentation and concealment of coverage to Hilley was routinely extended to similarly situated insureds of Allstate.
"This Court has reviewed the evidence in this case from the impaneling of the jury to the post-trial motions and finds no reason or ground to order a new trial or a remittitur.
"The jury was extremely attentive during the trial of the case. The jury had a diverse background, from well-educated professional people to career hourly wage earners. They had an opportunity to observe the demeanor of each of the witnesses and the truthfulness thereof. The Court has looked for, but not found, bias, passion, prejudice, corruption, or other improper motives affecting the jury, its verdict, or any other aspect of the trial. This court has read and considered the long list of rules applicable to a review of jury verdicts set out with great clarity in Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986), and has found no reason to reduce or set aside the verdict. The verdict is justified by the evidence in this case, as will be discussed below.
"This Court is not authorized to become a thirteenth juror. In absence of any specific grounds enumerated in Hammond, supra, the Court is authorized to reduce a verdict only if it finds that it is `excessive as a matter of law.' Can it be said that the two million dollar verdict is excessive as a matter of law? A look at the facts reveal that James Hilley and his wife bought a home and wanted it insured. Being a home builder, he made substantial improvements on the home. Phillips inspected it and told Mr. Hilley that he had as `nice a home as is in the neighborhood' and placed a value of thirty-five thousand dollars on it. *879 As a result of his conversation with Phillips, Hilley believed that, if a total loss occurred, he would be paid thirty-five thousand dollars. In essence, Phillips denied this. The jury found Hilley was justified in believing this and further found that he was not paid [in accordance with] the representations that were made to Hilley.... This finding is justified under the evidence.
"The disturbing fact in this case is the enormity of the wrong. Allstate's adjustor, Benjamin F. Frazier, testified that as the fire insurance adjustor in North Alabama, he has had other cases where homeowners are incapable of rebuilding their homes and that if `they do not replace it, we don't pay it.' James Hilley and other similarly situated policy holders were never informed that their homeowner's coverage was dependent on their respective financial abilities. Allstate's wrong consisted of falsely representing to these policy holders the extent of coverage on their homes and concealing the necessity of obtaining financing prior to Allstate's paying. The jury was justified in finding that this conduct was intentional, gross and malicious. A large and substantial fine [is] justified to punish the wrongdoer in this case and to prevent similar wrongdoings in the future.
"Under Hammond, supra, and Green Oil Co. v. Hornsby, 539 So.2d 218 (Ala. 1989), certain factors must be considered by the Court in evaluating the verdict.
"First, if the harm is grievous, the damages should be much greater. Here, Hilley [and] his pregnant wife and children were left homeless after being assured by Allstate that they would be `fully protected' in the event of total loss. Also, there is ample evidence to support a conclusion that this happens to twenty to twenty-five percent of Allstate's policy holders who suffer a total loss. It is without dispute that this conduct by Allstate [toward] Hilley is not an isolated case, but to the contrary, the normal way a policy holder can expect to be treated if he cannot obtain financing to rebuild his own home.
"Another consideration under Hammond, supra, is whether or not the defendant profited by [its] action. It is almost without dispute that Mr. Hilley suffered a twenty-five thousand dollar loss or, put differently, Allstate saved twenty-five thousand dollars by refusing to pay Mr. Hilley. This `profit' to the defendant, coupled with other similarly situated policy holders of the defendant, easily can result in enormous savings to Allstate Insurance.
"Finally, the financial position of the defendant is a factor to be considered.... No evidence was offered as to the financial position of Allstate and the Court is left without any guideline with which to judge the financial impact of this fine. For all the Court knows, the two million dollar fine is nothing more than a `slap on the wrist' to this wrongdoer. In fact, for all the Court knows, an additur may be appropriate in order to foster the primary purpose of punitive damages; i.e., to punish the wrongdoer and prevent similar wrongdoings in the future. As noted by this Court, the culpability and enormity of the wrong are both great in this case, thereby calling for a substantial fine. The Court cannot say the two million dollar fine imposed by this attentive jury is `excessive as a matter of law.'
"Accordingly, [the] defendant's motions for new trial, judgment notwithstanding the verdict, and reduction of the jury verdict are due to be, and they are hereby, denied.
". . . .
 "/s/ Julius S. Swann, Jr.
 "Circuit Judge"
We believe that the facts of this case strongly support the trial court's conclusions. The trial court did not err in declining to reduce the $2,000,000 damages award.[3]
*880 "[O]nly where the record establishes that the award is excessive or inadequate as a matter of law, or where it is established and reflected in the record that the verdict is based upon bias, passion, corruption, or other improper motive may a trial court order a new trial or remittitur." Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). The record does not support Allstate's assertion that the jury's verdict was the result of bias, passion, prejudice, or any other improper motive. "It has long been the rule in Alabama that jury verdicts carry with them a presumption of correctness, and that this presumption is strengthened when the trial court denies a motion for new trial." Alfa Mut. Ins. Co. v. Northington, 561 So.2d 1041, 1048 (Ala. 1990). See also Charter Hosp. of Mobile, Inc. v. Weinberg, 558 So.2d 909, 911 (Ala. 1990).
Based upon the foregoing reasons, the judgment is affirmed.
AFFIRMED.
MADDOX, SHORES and KENNEDY, JJ., concur.
HOUSTON, J., concurs specially.
HOUSTON, Justice (concurring specially).
If the representations by Allstate's agent were only promissory in nature, then the trial court erred in not directing a verdict for Allstate and in not entering the JNOV requested by Allstate, for there was not a scintilla of evidence that Allstate intended not to rebuild the Hilleys' house, replace the Hilleys' house, or pay the Hilleys $38,000 if their house was destroyed by fire at the time Allstate's agent told the Hilleys that is what Allstate would do.
However, I do not view the representations of Allstate's agent as futuristic. I view these as representations as to what the policy of insurance bound Allstate to do in the event the Hilleys sustained a loss. These representations were misrepresentations because they did not reflect what the language of the policy bound Allstate to do on July 24, 1985, when Allstate's agent made these representations. The replacement-cost provision in the Allstate policy had been held by this Court to be valid and binding before these representations were made. See Huggins v. Hanover Insurance Co., 423 So.2d 147 (Ala.1982); see also, Hilley v. Allstate Ins. Co., 562 So.2d 184, 189 (Ala.1990).
NOTES
[1] We note that although Allstate originally assessed the market value of the Hilleys' house at $35,000, upon learning that the house had two bathrooms rather than one Allstate increased its assessment to $38,000. Although the effect is insignificant, these figures have been used interchangeably throughout the record in this case.
[2] Specifically, we held that "because the Hilleys failed to satisfy the policy's condition precedent [completion of repair or replacement], Allstate had no duty to advance the [replacement cost]." Hilley, 562 So.2d at 190. "Having affirmed Allstate's summary judgment as to the Hilleys' breach of contract claim with regard to replacement cost, we ... also affirm[ed] that summary judgment as to the Hilleys' bad faith claim with regard to replacement cost." Id. We also affirmed the summary judgment as to the breach of contract claim for additional living expenses because "the Hilleys had failed to satisfy the condition precedent of submitting receipts for additional living expenses." Id. at 192. Finally, "because we ... affirmed the summary judgment for Allstate as to the Hilleys' breach of contract claim with regard to additional living expenses, we ... affirm[ed] the summary judgment for Allstate as to the claim of bad faith refusal to pay with regard to additional living expenses." Id.
[3] Although Ala.Code 1975, § 6-11-21, limits punitive damages to $250,000 in many circumstances, we note that this action was commenced before June 11, 1987, and, therefore, that this statutory limitation is inapplicable.