LITTLETON INDUSTRIES, INC., & another *vs.* PEERLESS
INSURANCE COMPANY.

Suffolk.  March 13, 1981. — May 12, 1981.

Present: GRANT, CUTTER, & KASS, JJ.

*Insurance,* Liability insurance:  insurable interests.

In an action seeking a declaration as to the duties of an insurance company
under a renewal policy of liability insurance on certain property,
which was issued to the corporate plaintiff after it had conveyed the
property to another, evidence that an endorsement to the policy did
not restrict its definition of "insured premises" only to premises owned
by the insured and that the consideration for the transfer was nominal
and the transferee assumed title subject to certain mortgages was insuf-
ficient to warrant the judge's conclusion that the corporate plaintiff
may have retained an insurable interest in the property.  [818-819]
Under the specific terms of a renewal policy of liability insurance issued to
a landowner, the policy was not intended to cover liabilities arising
with respect to premises referred to in the policy which had been con-
veyed by the owner.  [819-820]

CIVIL ACTION commenced in the Superior Court on
June 21, 1977.

The case was heard by *Porada*, J., a District Court judge
sitting under statutory authority.

*Robert H. Flynn* for the defendant.

*Paul J. Tiernan* for the plaintiffs.

CUTTER, J.  This complaint by Littleton Industries, Inc.
(Littleton), and Jack W. Griffin (Griffin), individually and
as trustee of Plains Realty Trust (Plains), seeks a declaration
concerning the duties of Peerless Insurance Company (Peer-
less) under a renewal policy of liability insurance issued by
it to Littleton.  The matter was heard jury-waived in the
Superior Court on a statement of agreed facts supplemented
by an evidentiary hearing on three specified issues.

Agreed facts include the following. Griffin established Littleton and owned eighty percent of its common stock. Plains exists under a duly recorded trust instrument. Griffin is its sole trustee and he and his family are the beneficiaries named in the trust instrument. From 1973 to 1977, Littleton owned a number of multi-family apartment buildings, including ½ Front Street, Shirley. By deed dated December 30, 1976, recorded about January 15, 1977, this property and another were transferred by Littleton to Plains for a nominal consideration, subject to certain mortgages.

Littleton purchased insurance, both fire and casualty, on all of its properties through Hardy Insurance Agency (Hardy), an insurance broker of Littleton, which arranged with Peerless to issue liability policies on Littleton's properties. About February 1, 1977, Littleton (in care of Griffin) received from Hardy a renewal liability policy covering all Littleton's properties including ½ Front Street, Shirley. About February 5 or 6, Griffin called Hardy's office and reported to Hardy's secretary, Miss Rae, the transfer to Plains of the parcel at ½ Front Street, Shirley, and told her that the renewal policy should be changed to take care of this transfer of ownership. Miss Rae replied, "We will take care of it." Miss Rae, for Hardy, wrote to Peerless about February 9, 1977, a memorandum stamped as received by Peerless at its Waltham office on Friday, February 11, which said: "There seems to be some changes on this policy such as: Littleton Industries now has only one property and that is, 59 Melrose Street, Fitchburg . . . The other properties, [including] Front Street, . . . are now under Plains Realty Trust of which Mr. Griffin is the Administrator [*sic*]. Can you write an OLT for the latter properties and eliminate or endorse the present policy to only one property?" (O.L.T. refers to a type of policy covering "Owners,' Landlords' and Tenants'" interests.) One Brennon of Peerless's Waltham office sent a copy of Miss Rae's memorandum to the Peerless home office, with a request, "Please endorse deleting." Such a deletion endorsement was issued, purporting to be effective February 9, 1977, although the record does not show when the endorsement in fact was

written.   Brennon replied to Miss Rae, "Please send a separate application to cover the locations in the new name."  The trial judge, on oral evidence, found that this notice was received by Hardy, Wednesday, February 16, 1977, the day when a fire damaged the building at ½ Front Street, Shirley, and a child lost her life there.

This death was the subject of an action brought by the child's mother in which Littleton and Griffin were named as defendants.  The trial judge properly took judicial notice of the allegations in the complaint filed in this wrongful death action with the clerk in the same court and in the same county in which the judge was then sitting.  *Miller* v. *Norton*, 353 Mass. 395, 399-400 (1967).

The trial judge found that the pleadings in the wrongful death action, while "vague and ambiguous," alleged negligence and wilful misconduct on the part of Littleton in failing, both as owner and landlord, "to provide a safe and secure tenement" for the tenant and her decedent, and charged Littleton with responsibility for the alleged negligence of Griffin in providing an electric stove for use by the tenant, acts and omissions which allegedly resulted in the death of the tenant's daughter.

The trial judge, in dealing with aspects of the litigation from which Peerless's present appeal has been taken, found that Littleton had not made application for the renewal policy issued by Peerless, effective February 1, 1977, but that the policy was issued on the basis of information furnished to Peerless in the past.  Hardy, who was acting as broker or agent for Griffin, Littleton, and Plains, but not as agent for Peerless, had all the necessary information in the brokerage office to make a new application for insurance in the name of Plains, but had not received any notice from Peerless of the need for a new application until the morning of the fire.  The trial judge also concluded that Griffin's request to change the insurance coverage from Littleton to Plains on February 5 or 6 did not authorize (nor did Miss Rae's memo of February 9 direct) cancelling the existing insurance and leaving "the property without any insurance."  Each communication (Griffin to Miss Rae and Miss Rae to

Peerless) contemplated that Peerless would transfer to Plains the liability insurance on the properties which had been conveyed, without requiring a probably unnecessary new application,[1] and would simultaneously delete the coverage with respect to properties in fact transferred. Peerless is not shown on this record to have made any check by telephone with Hardy or Miss Rae while the mails moved slowly in both directions between Littleton and Peerless's Waltham office from February 9 to February 16.

The renewal policy contained various relevant provisions. Paragraph 9 of the "Conditions" provided that "[a]ssignment of interest under this policy shall not bind the company until its consent is endorsed hereon," subject to an exception not now pertinent. Article II, Persons Insured, provides: "Each of the following is an insured under this insurance to the extent set forth below . . .. (c) If the named insured is designated in the declarations as other than an individual, partnership, or joint venture, the organization so designated and any executive officer, director or stockholder thereof while acting within the scope of his duties as such . . .." The policy's obligation under its general liability hazards was to "pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of Coverage A, bodily injury, or Coverage B, property damage, to which this insurance applies, caused by an occurrence [i.e. an accident], and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such bodily injury or

---

[1] The record does not adequately show basis for any inference that the interests of Griffin and his family in Littleton and Plains were substantially the same as a practical matter or that the transfer of ½ Front Street was unlikely to result in significant changes in management or beneficial ownership. Thus, there is no ground for holding that equitably Peerless should be estopped to assert that its risk would be unfairly increased by adjusting the renewal policy to provide coverage for Plains with respect to ½ Front Street. This type of coverage transfer may well have been one which some insurers would have made or bound without further inquiry for a former insured on the representation of a responsible broker regularly supplying them with business.

property, even if any of the allegations of the suit are groundless, false, or fraudulent . . . ."[2]

The trial judge, on the evidence and the statement of agreed facts, concluded (1) that Peerless was required to defend Littleton and Griffin, as an officer of Littleton, in the wrongful death action; (2) that Peerless was not required to defend Plains or Griffin as a trustee of Plains, or to reimburse Plains for any expenses incurred by it in the defense of the wrongful death action; and (3) that Peerless is obligated to pay any judgment in the death case within the policy limits recovered against Littleton and Griffin as an officer or agent of Littleton, but not any judgment recovered against Plains or against Griffin as a trustee of Plains. Peerless appealed from the parts of this judgment listed above in items (1) and (3).

1. Littleton contends that it still has an insurable interest in the ½ Front Street premises despite the conveyance of that parcel to Plains. On the facts outlined above, the trial judge ruled that "it cannot be said as . . . matter of law that Littleton . . . did not have an insurable interest" in the Front Street premises. She based this ruling on the circumstance that the O.L.T. endorsement did not restrict its definition of "insured premises" only to premises owned by the insured, and on the agreed fact that consideration for the conveyance to Plains "was nominal and Plains assumed

---

[2] The schedule of general liability hazards shows that "completed operations" are "not covered." In other words, Littleton did not purchase this coverage. "Completed operations hazard" is defined in the policy extremely obscurely as "bodily injury and property damage arising out of operations . . . but only if the bodily injury or property damage occurs after such operations have been completed . . . and occurs away from premises owned by or rented to the named insured. . . ." The same schedule also lists the "interest of the named insured in such premises" (i.e., those including ½ Front Street, shown on the general schedule of properties in the policy) as that of "owner." In an endorsement relating to the owners', landlords' and tenants' liability insurance, the term "insured premises" is defined as meaning "the premises . . . designated in the policy as subject to this endorsement, including the ways immediately adjoining . . ., gardens incidental thereto on land not owned by the named insured," and certain cemetery lots.

title subject to certain mortgages." From this meager stipulated statement the trial judge "inferred that Littleton . . . may well have been liable on indebtedness secured by . . . mortgage and thus still [have] had a legitimate insurable interest in" the Front Street property. The judge, however, recognized that she "had no evidence before" her from which to draw any such inference. We are of opinion that the inference thus drawn has no adequate basis in the record, which merely refers to mortgages without stating any of the persons liable upon them. It also seems to us to be immaterial that the transfer to Plains of the Front Street property was for a "nominal consideration." We perceive no respect in which this "raises the question of ownership" as between Littleton and Plains as the trial judge suggests.

2. The trial judge points out that, with respect to a liability policy, title to specified insured premises may not be "the test of an insurable interest." There are intimations to this effect in 3 Couch, Insurance 2d § 24:159, at 274 (1960 & Supp. 1980), in which it is said that, if "the occurrence of an insured event will cause an individual economic disadvantage in the form of legal liability, courts have tended to find an insurable interest in that happening." The authorities in Massachusetts seem to have adopted no such broad principle. See *Cassidy* v. *Liberty Mut. Ins. Co.*, 338 Mass. 139, 142 (1958); *Airway Underwriters* v. *Perry*, 362 Mass. 164, 168 (1972). In these cases under a liability policy referring to specific property and representing the named insured to be the "owner," coverage was found not to exist after a transfer by the named insured of the property or chattel referred to in the liability policy. See Annot., 1 A.L.R.3d 1193, 1196 (1965). See also *Employers' Liab. Assurance Corp.* v. *Merrill*, 155 Mass. 404, 409 (1892). Even a somewhat tenuous continuing right to possession, of course, may suffice to afford an insurable interest. See e.g., *Womble* v. *Dubuque Fire & Marine Ins. Co.*, 310 Mass. 142, 146-147 (1941). In the present case the schedule of specific properties as to which the insurance was to apply, together with the listing of Littleton's interest in these prop-

erties as that of "owner," and the implication from the
O.L.T. endorsement's specific provision (see note 2, *supra*)
that incidental "gardens . . . on land *not owned* by the in-
sured" (emphasis supplied) were to be included within the
term "insured premises" suggest that the policy was reason-
ably intended to cover (except for incidental adjacent prem-
ises such as gardens) liabilities arising only with respect to
premises still owned by Littleton.

3. Peerless argues that, in any event, the trial judge
should have treated the alleged liability attributed in the
wrongful death case to Littleton and to Griffin, as an officer
of Littleton, as not covered under the O.L.T. provisions
and the general liability provisions of the renewal policy be-
cause the bases of such alleged liability have no relation to
current operations of the ½ Front Street property, as of the
date of loss, by Littleton either as owner or landlord. Peer-
less's contention is that any recovery for wrongful death
against Littleton must be based upon the provisions of the
renewal policy relating to the "completed operations
hazard" (see note 2, *supra*), and that, because Littleton did
not purchase that coverage, it has no right to protection
under it. We do not reach any question with respect to the
confusing language of that provision, but decide only that
the coverage under the general liability and O.L.T. aspects
of the renewal policy was and is dependent on whether the
insured remained (on the date of the loss) an owner or land-
lord or at least had the right to possession of each of the
specified premises, including the Front Street property. On
this record, there is no showing (a) that Littleton retained as
of the date of the loss any slightest title to or position as
landlord of the Front Street property, or (b) that Littleton
after the transfer of that property to Plains had any continu-
ing right to possession of that property.

4. The judgment of the Superior Court is to be modified
by striking pars. 1, 2 and 7, and by adding in appropriate
words a declaration that Peerless is not liable under the

renewal policy[3] for the defense in the wrongful death action of Littleton or of Griffin individually as an officer of Littleton, or for any judgment recovered from Littleton or from Griffin as an officer of Littleton, or for any legal fees, expenses, or costs incurred by them respectively. As thus modified, the judgment is affirmed.

*So ordered.*

[3] The complaint seeks a declaration of rights and duties only with respect to the renewal policy. No question is presented with respect to Peerless's liability under the prior liability policy for any acts of Griffin or Littleton during the term of that policy while Littleton still owned the ½ Front Street property.