ON APPLICATION FOR REHEARING
The original opinion in this case is withdrawn and the following opinion is substituted in its place.
This is an action to recover damages for a loss covered by homeowner's insurance. The trial judge granted a motion for a directed verdict in favor of the insurance company after the presentation of the insureds' evidence. We affirm.
The appellants, David and Evelyn Huggins, owned real estate in Madison County. The appellants built a house on the property, acting as their own contractors. On February 25, 1980, before the house was *Page 149 
completed, a fire totally destroyed the building.
Hanover Insurance Company had issued its policy of insurance to the Hugginses, insuring the property against fire loss and other perils. The limit of liability was $120,000.00.
The insurance policy includes the following provisions:
 "c. Buildings under Coverage A or B at replacement cost without deduction for depreciation, subject to the following:
 "(1) If at the time of loss the amount of insurance in this policy on the damaged building is 80% or more of the full replacement cost of the building immediately prior to the loss, we will pay the cost of repair or replacement, without deduction for depreciation, but not exceeding the smallest of the following amounts:
 "(a) the limit of liability under this policy applying to the building;
 (b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or
 (c) the amount actually and necessarily spent to repair or replace the damaged building."
Part c. also provided:
 "(4) When the cost to repair or replace the damage is more than $1000 or more than 5% of the amount of insurance in this policy on the building, whichever is less, we will pay no more than the actual cash value of the damage until actual repair or replacement is completed.
 "(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis."
On March 21, 1980, the plaintiffs entered into a contract to purchase a new home for $79,900.00. On May 13, 1980, the plaintiffs met with an adjuster for Hanover for the purpose of settling the fire loss. The plaintiffs were presented with a breakdown of the recovery available under the policy. The full replacement cost of the building was $106,366.21. This figure was derived from an estimate made by a building contractor, Mr. Caneer, after reviewing the blueprints for the house. The applicable depreciation was $21,266.21, and the actual cash value was $85,100.00. The deductible was $100.00, resulting in an actual-cash-value claim of $85,000.00. The breakdown also specified that a supplemental claim could be made for $21,266.21 if the plaintiffs complied with the terms of the "Replacement Cost Coverage." The breakdown is as follows:
 Full replacement cost $106,366.21 Less applicable depreciation 21,266.21 Actual-cash-value loss 85,100.00 Less deductible 100.00 Actual cash value claim 85,000.00 Supplemental claim 21,266.21
At the May 13 meeting, Hanover offered an actual-cash-value settlement of $85,000 and documents were presented to plaintiffs for this purpose. Plaintiffs refused to accept the settlement and took copies of the documents to their attorney. On June 3, 1980, plaintiffs accepted a draft for $85,000 and executed a proof of loss, a statement of the full cost of repair or replacement, and a loan receipt. Plaintiffs did not sign a release and the draft contained no words of release of liability.
On July 28, 1980, the Hugginses brought an action to recover an additional $34,900 under the policy. They claimed the difference between the full limit of liability on the policy ($120,000.00) and the amount paid by Hanover ($85,000.00) less the deductible ($100.00). The action was tried before a jury. The trial judge granted the insurance company's motion for a directed verdict at the close of the Hugginses' presentation of evidence.
The issue raised on appeal is whether the trial court erred in granting a directed verdict in favor of the insurer. Plaintiffs contend that the trial court erred, because, they say, there was evidence to support their contention that they were due a greater amount under the insurance policy. *Page 150 
A trial judge may properly grant a directed verdict only if, without weighing the credibility of the evidence, the non-moving party does not present a prima facie case. Feasterv. American Liberty Insurance Co., 410 So.2d 399 (Ala. 1982);Casey v. Jones, 410 So.2d 5 (Ala. 1981). A directed verdict may not properly be granted if there is any evidence to support a verdict in favor of the non-moving party. Id.
As we read this policy under part c., the plaintiffs would be entitled to the smallest of three amounts. Under c. (1)(a) recovery would be $120,000; under c. (1)(b) recovery would be $106,366.21, if the building were rebuilt on the same premises; under c. (1)(c) recovery would be $79,900.00 if we consider the new home purchased by the plaintiffs to be a replacement for the home destroyed.
Subparagraph c. (4) limits all replacement cost recovery under c. (1) to actual cash value until repair or replacement is complete. Subparagraph c. (5) allows for an actual-cash-value recovery prior to replacement and a supplemental claim when replacement is completed.
Hanover asserts that the $85,000 represents the actual cash value of the destroyed home, that this is the amount due under the provisions of the policy, and that the plaintiffs accepted it. Hanover concedes that had the plaintiffs elected to repair or replace the home, then they would be entitled to an additional sum in the amount of the difference between the actual cash value and the replacement cost under subparagraph c. (5). The policy provided that the insurer would pay the cost of replacement without deduction for depreciation, but not exceeding the smallest of the policy limits ($120,000.00), the replacement cost for equivalent construction and use on the same premises, or the amount actually and necessarily spent to replace the damaged house. Even if the purchase of the new home by the plaintiffs is considered a "replacement," its cost was only $79,900, which is less than the amount paid by Hanover.
Provisions like those contained in subparagraph c. (4) have been interpreted as providing a condition precedent to an insurer's duty to pay repair or replacement costs of an insured building. A party who has not repaired or replaced his insured building has not complied with the condition precedent to recovery under the policy and so cannot recover. See Kolls v.Aetna Casualty Surety Co., 503 F.2d 569 (8th Cir. 1974);Bourazak v. North River Insurance Company, 379 F.2d 530 (7th Cir. 1967).
Clearly the house was not "repaired"; our next consideration, then, is whether the new house was a "replacement." In the absence of a definition within the insurance policy and in the further absence of Alabama case law defining "replacement," the term must be given its common interpretation. Green v. Merrill,293 Ala. 628, 308 So.2d 702 (1975).
Replace means "to take the place of esp. as a substitute or successor" or "to put something new in the place of." Webster'sNew Collegiate Dictionary, G. C. Merriam Co. (1974). (Emphasis added.) Since a new home has not been built on the site of the fire-damaged home, the Hugginses failed to meet the second definition of replace. While the new house did not take the place of the fire-damaged house in the same physical location, it did serve the same function as the previous home and might be considered a substitute therefor. The $79,900.00 paid for the new home, then, is the amount actually and necessarily spent to replace the damaged building as provided in subparagraph c. (1)(c).
Since the Hugginses received actual cash of $85,000.00 and actually spent only $79,900.00 to replace the damaged building, they actually received $5,100.00 more than required under the policy. In any event, we find that Hanover fulfilled its obligations under the policy under subparagraphs c. (1)(b) and c. (4), as well as under c. (1)(c), when it paid the insureds the $85,000.00, which they accepted.
Apparently denying that the new house was a replacement, appellants contend that subparagraph (5) qualifies, limits, and controls (4) by its language. Subparagraph (5) reads: *Page 151 
 "(5) You may disregard the replacement cost loss settlement provisions and make claim under this policy for loss or damage to buildings on an actual cash value basis and then make claim within 180 days after loss for any additional liability on a replacement cost basis."
Appellants place emphasis on the meaning of the word "basis" and claim that one "basis" of claiming replacement loss is to procure a competent estimate from a contractor and then use it to claim loss. Appellants argue that if the company intended for "basis" as used in subparagraph (5) to mean "when actual repair or replacement is completed," then it should have said so in that subparagraph. We dismiss this argument as placing emphasis on one word arbitrarily as opposed to interpreting the provision as a whole. This provision was not intended to allow for recovery of replacement cost without repair or replacement but, rather, was to allow an insured to make a claim for and to collect his actual-cash-value loss immediately and to make an additional claim within 180 days for costs incurred in repairing the building.
Assuming that the new house is not a replacement, if this Court holds that the Hugginses are entitled to replacement cost despite the fact that they did not meet the condition precedent of replacement, the appellee is correct when it says:
 "[T]he result . . . would mean that in many cases the actual cash value language in an insurance policy is meaningless. In a total loss, depreciation is deducted from replacement cost to determine actual cash value. Thus, actual cash value will nearly always be less than replacement costs. If the insured can recover either replacement cost or actual cash value without first having to repair or replace the damaged premises, then the actual cash value language in the policy has no scope of operation."
Thus, if we are to give effect to the "actual cash value" language of the policy, regardless of the replacement issue, we must find that Hanover has met its obligation under the policy by paying the actual cash value to the plaintiffs.
It is unnecessary for us to consider the issue of whether the signing of a proof of loss and cashing of a check for less than the amount claimed by an insured preclude recovery by the insured of the additional amount claimed, since we have held that under the policy Hanover does not owe the Hugginses any additional amount.
Finally, this Court reaffirms the trial court's power to interpret the meaning of a contract.
 "[T]he court, not the jury, will interpret the meaning of a contract, whether oral or written, unless the court determines the contract to be ambiguous and one of the parties makes an offer of proof as to surrounding facts and circumstances which would clarify the contract's meaning, in which case it is within the province of the jury to ascertain those facts and draw such inferences from them as are necessary to the interpretation of the contract upon proper instructions by the court."
Alpine Const. Co. v. Water Works Bd., 377 So.2d 954, 956 (Ala. 1979).
REHEARING GRANTED; OPINION WITHDRAWN; OPINION SUBSTITUTED.
AFFIRMED.
TORBERT, C.J., and MADDOX, JONES, ALMON, SHORES and BEATTY, JJ., concur.
FAULKNER, EMBRY and ADAMS, JJ., dissent. *Page 152