Merrigan, J.
Our decision in this case requires that we interpret an insurance contract between the appellees and appellant. The relevant facts as found by the trial judge and as stipulated in the Draft Report are as follows:
The Mains (the appellees), who reside in the town of Adams, owned a small, one-story house in a remote area of the town of Florida in Berkshire County, close to the Vermont border, known as Florida Mountain. The house was a log cabin-like structure built some decades ago with an addition constructed about twenty years later. It stood on piers, and the floor was not insulated. The walls and ceiling were insulated. There was indoor sanitation (one bathroom) but water came from a nearby stream. There was electrical service to the structure. There was no central heating; space heaters were used when needed. The structure was located in a clearing in the woods, on a 5-acre parcel of land. The house was located some distance back from Central Shaft Road.
The Mains bought the log cabin on Central Shaft Road in January 1989. At that same time they were living in a house on Hughes Street in Adams which they had owned since 1987. The Hughes Street home is a two-story, three-bedroom Victorian located in a residential neighborhood. The house on Florida Mountain was purchased as a vacation home and was used by the Mains on weekends and holidays.
The Florida Mountain house was insured by Cambridge Mutual Fire Insurance Co. (the appellant)[2] against fire loss and other perils. The limit of liability was $70,000.00.
A fire destroyed the log cabin on Central Shaft Road on October 11, 1989. The Mains properly notified Cambridge and, after some negotiation, the Mains accepted Cambridge’s payment in the amount of $52,500.00 for the actual cash value of the destroyed building.
Prior to the fire, in August 1989, the Mains had agreed in writing to buy a house on West Street in Adams. They listed their Hughes Street home for sale around the same time. The West Street property, like the Hughes Street property, is in a residential neighborhood, and is a two-story nine-room Victorian house with town water and sewer. The closing on the West Street house occurred several weeks after the Florida Mountain property was destroyed by fire. In November 1989, the *115 Mains moved from the Hughes Street house to the West Street house. The purchase price of the West Street house was $95,000.00. The West Street house became the Mains’ new primary residence, as they had intended from the outset.
On December 8,1989, the Mains submitted to Cambridge an estimate prepared by Edrich Builders Inc. of Brookfield, Connecticut, to replace the Florida Mountain structure. The price stated in the estimate was $95,552.15.[3] The Mains have not repaired or rebuilt the Florida Mountain cottage, nor have they built any other structure on the land there. They have not built another seasonal home at any other location.
The insurance policy provides in a paragraph entitled “Loss Settlement” (Exhibit 1), in pertinent part, as follows:
5.Loss Settlement [...]
If at the time of loss the amount of insurance in this policy... is 80% or more of the full replacement cost of the building immediately prior to the loss, we will pay the cost of repair or replacement without deduction for depreciation. We will pay replacement cost if the damaged building is repaired or replaced by you on the described location or some other location in the Commonwealth of Massachusetts within a reasonable time but not more than two years from the date of loss.
We will pay the smallest of the following amounts:
(a) The limit of liability under this policy applying to the building;
(b) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises; or
(c) the amount actually and necessarily spent to repair or replace the damaged building.
The terms “replace” and “replacement” are not defined, and there is nothing in the contract which aids in determining the sense in which the words were used.
The Mains made a written demand upon Cambridge for $17,500.00, the difference between what they had been paid for the actual cash value and the policy limit, claiming that by virtue of the purchase of the West Street home three weeks after the fire loss, they had fulfilled the condition precedent to recovery under the replacement provisions of the policy. A demand letter, pursuant to G.L.c. 93A, was sent to Cambridge, who made a timely response denying the claim for replacement value. It was Cambridge’s position that the Mains had not replaced their vacation home within the meaning of the contract, but stated that if the vacation home was in fact repaired or replaced within the time limitations provided by the contract, payment would be made as requested.
The trial judge ruled that Cambridge had responded reasonably to the Mains’ demand under G.L.c. 93A and that there was no willful knowing violation of G.L.c. 93A.
The trial judge ruled that the purchase of the West Street house constituted a “replacement” under the terms of the policy and entered judgment for the Mains. Cambridge appeals from the denial of its Request for Ruling No. 8 which stated: ‘The evidence requires a finding that the Mains failed to replace the Central Street property, a condition precedent to recovery under the policy’s replacement cost *116 coverage.”
At issue is whether the Mains’ purchase of the West Street home three weeks after the fire loss of the vacation home meant that they did “replace the damaged building” within the terms of the policy which would entitle them to recovery under the joss settlement provisions of the policy. We conclude that the Mains did not by reason of their purchase of the West Street house “replace the damaged building” within the meaning of the policy and we reverse the judgment of the trial court.
The issue presented by this appeal is one of first impression in the Commonwealth. It requires the determination of whether the Mains, in purchasing a new primary residence, - “replace [d] the damaged building” - as provided in Paragraph (5) (1) (c) of the loss settlement provisions of the contract. The “damaged building” was a cabin-like structure used on weekends and holidays as a vacation home. It was located in the woods, was built on piers without floor insulation, and was without running water and without central heat. There was one bathroom; there was electricity; and there was insulation in the ceilings and walls. The “damaged building” was replaced by a two-story, nine-room Victorian house in a residential neighborhood, which was serviced by town water and sewer, on West Street in Adams. This residence was occupied by the Mains as their primary residence.
The Mains argue that because the policy does not define the term “replace the damaged building” that the policy is ambiguous, and therefore, it must be construed in their favor.
Ambiguity exists where the policy is “susceptible of at least two rational interpretations.” Liquor Liability Joint Underwriting Association of Massachusetts v. Hermitage Ins. Co., 419 Mass. 316, 322 (1995). However, “an ambiguity is not created simply because a controversy exists between the parties, each favoring an interpretation contrary to the other.’’ Lumbermens Mutual Casualty Co. v. Offices Unlimited, Inc:, Federal Insurance Co., third-party defendant, 419 Mass. 462, 464 (1995). Where the terms of the policy are “plain and free from ambiguity,” Barnstable County Mutual Fire Insurance Co. v. Lally, 374 Mass. 602, 605 (1978), they are not to be construed strictly against the insurer, but rather, they are to be construed in “their usual and ordinary sense.” Id. Here, “ [t]he words [‘replaced the damaged’ building] are not to be construed in isolation, but only as part of the entire insurance policy.” Save-Mor Supermarkets, Inc. v. Skelly Detective Service, Inc., 359 Mass. 221, 226 (1971). “The fair meaning of the language used, as applied to the subject matter, is to be ascertained.” Oakes v. Manufacturers’ Fire and Marine Insurance Co., 131 Mass. 164, 165 (1880).
Guided by these well established principles of law, we refer to the policy for the Mains’ primary residence (Ex. 6). The Declarations Page on this policy shows coverage for premises at Hughes Street (the Mains’ primary residence) under Section 1 with additional coverage for a residence occupied by the insureds at Central Shaft Road, Florida, Massachusetts. A separate policy was issued for the Central Shaft Road cabin (Ex. 1). The parties to these contracts obviously intended at the time of their formation that a primary residence plus an additional secondary residence would be covered.
The contract to purchase the house at West Street was made prior to the fire in August 1989 which destroyed the vacation cabin on Central Shaft Road in Florida. The insurance contracts, as a manifestation of the intention of the parties, do not support the Mains’ contention that the West Street property, which was acquired pursuant to a purchase and sale agreement entered into before the loss occurred, qualifies under the policy as a “replace [ment] [of] the damaged building.” This is especially so where, as here, the post-loss acquisition does not serve the same function or purpose as the damaged building.
Most cases in this area address disputes concerning whether the insured would be covered where the building was replaced by another similar building at a differ *117 ent location, cf. Conway et al. v. Farmers Home Mutual Insurance Company, 31 Cal. Rptr. 2d 883 (1994); S&S Tobacco v. Greater New York Mutual, 617 A. 2d 1388 (1992). The applicable policy language here obviates any assertion by Cambridge that the Mains could only recover if they replaced the damaged building on the same site or at the same location.[4]
However, cases from other jurisdictions indicate by way of dicta that similar provisions of insurance contracts that contain phrases such as “replace” mean that the new structure must “serve the same function as the previous [structure] .’’ Huggins v. Hanover Insurance Co., 423 So. 2d 147 (1982); Conway et al. v. Farmers Home Mutual Insurance Company, supra at 886, (replace means “... substituting for an original item another item which serves the same function as the original...”)
In order to avail themselves of the policy provisions contained in Paragraph 5(1) (c), the Mains would have been required to “replace the damaged building” with one that served the same purpose or function as their weekend/seasonal log cabin that was destroyed by the fire. They did not. Rather, they replaced the log cabin with a property that they had intended to acquire before the loss occurred and a property which they acquired for purposes of occupying, and which they did occupy, as their primary residence. Accordingly, judgment for the plaintiffs is reversed and judgment shall enter for the defendant.

The Florida Mountain house was listed under “Additional Coverages” in both the policy given to the Mains by Cambridge for their Hughes Street home (Policy No. HP 1048042, effective June 8, 1989 through June 8, 1990, Exhibit 6) and for their West Street home (Policy No. 1267394, effective October 31, 1989 through October 31,1990, Exhibit 5).

Of this amount, $7,500.00 is listed as demolition and hauling costs relating to the remains of the existing building. There was an additional amount of $6,800.00 to rebuild the brick fireplace.

The policy language states: “We will pay replacement cost if the damaged building is repaired or replaced by you on the Described Location or some other location in the Commonwealth of Massachusetts within a reasonable amount of time but not more than two years from the date of loss.”