I agree with the majority's disposition of the agency issue. As to its disposition of the "policy fraud" issue, however, I respectfully dissent.
The majority states that "Ballard does not question the general validity and enforceability of this type of provision in a replacement policy, when the meaning of the provision is known to the insured." 671 So.2d at 1373. I disagree with this construction of Ballard's argument. Ballard frames the issue under his policy fraud theory as follows:
 "When the term 'actual cash value' is not, in any way, defined in the policy, but upon total loss the formula utilized by the insurance industry differs from common usage and understanding, does the carrier have a duty to disclose the material fact that the insured can never receive a cash amount in event of total loss for which he has paid a premium?"
Brief of Appellant, at 3 (emphasis added).
In defining the issue in this manner, Ballard has, indeed, "question[ed] the general validity and enforceability of this type of provision in a replacement policy." In other words, while Ballard insisted on immediate and unconditional payment of the full policy amount for the restaurant ($85,000) and its contents ($45,000), the Syndicate — which has never denied liability for the amount sought by Ballard — insisted only on reconstruction and replacement as conditions precedent to payment of those amounts. In reality, therefore, *Page 1376 
Ballard complains of not only the absence of an explicit definition of the phrase "actual cash value," but also theprocedures the policy requires in case of a loss.
The majority focuses primarily on Ballard's companion argument, namely, that "the Syndicate's insurance policy is fraudulent upon its face, because it does not disclose that the definition of 'actual cash value' is the replacement cost less depreciation." 671 So.2d at 1373. For the following reasons, I disagree with Ballard's arguments as to both of these complaints, which I shall discuss separately.
 I. Procedure
In Hilley v. Allstate Ins. Co., 562 So.2d 184, 189 (Ala. 1990) ("Hilley I"), this Court recognized the enforceability of a claims adjustment procedure like the one of which Ballard complains.[3] Because the insurance policy and the operative facts involved in Hilley I are so similar to those involved here, I shall set forth extensive portions of that opinion.
In Hilley I, James and Robbie Hilley sued Allstate Insurance Company, seeking damages under various theories, including breach of contract and bad faith refusal to pay "$38,000 for dwelling protection and $19,000 for personal property protection." Id. at 186. The Hilleys' homeowners' insurance policy contained the following pertinent provisions:
" '5. How We Settle a Loss
" 'Building Structures
 " 'Covered loss to building structures insured under the Dwelling Protection coverage will be settled by one of the following methods:
 " 'a) Replacement Cost. This means there will not be a deduction for depreciation.
 " 'Payment will not exceed the smallest of the following amounts:
 " '1) the replacement cost of that part of the building damaged for equivalent construction and use on the same premises;
 " '2) the amount actually and necessarily spent to repair or replace the damaged building; or
 " '3) the limit of liability applicable to the building.
 " 'We will not pay more than the actual cash value of the damaged property until the repair or replacement is completed. [Emphasis supplied.]
 " 'b) Actual Cash Value. This means there may be a deduction for depreciation.
 " 'If you decide not to repair or replace the damaged property, settlement will be on an actual cash value basis, not to exceed the limit of liability applicable to the building. You may make claim within 180 days after the date of loss for any additional payment on a replacement cost basis if you repair or replace the damaged property.' "
562 So.2d at 188.
After a fire destroyed their home, the Hilleys' attempted to recover the proceeds of their policy. Hilley I describes as follows the events connected with those attempts:
 "[T]he Hilleys contacted Allstate and Ben Frazier, senior claims representative with Allstate, to make a claim for the loss caused by the fire. On January 29, 1986, the Hilleys filed a sworn 'proof of loss' form with Allstate. At that point, the Hilleys received approximately $14,000 for the loss of the contents and approximately $13,000 for the actual cash value of their house. [Emphasis added.] Then, if they chose, they could replace or rebuild their house, and, within 180 days, make an additional claim for the amount by which their *Page 1377 
cost of rebuilding or replacing the house exceeded the actual cash value of the house. The draft for $13,000 was made payable to the Hilleys and to the finance company holding the mortgage. After paying off the mortgage debt, the Hilleys had approximately $3,000 of the $13,000 remaining.
". . . .
 "After the loss, the Hilleys sought to obtain the best price to rebuild approximately the same house that had been destroyed by fire. They also attempted to obtain loans from various financial institutions to finance the rebuilding of their house, but their requests were denied. On May 26, 1986, the Hilleys' attorney wrote Frazier concerning the Hilleys' inability to obtain financing for their home and seeking reimbursement for additional living expenses that the Hilleys had incurred:
 " 'For your review, please find enclosed copies of correspondence from Norwest Financial and Central Bank of the South rejecting Mr. Hilley's application for mortgage money to rebuild his home. Mr. and Mrs. Hilley have been advised by Hicks Construction Company that they will begin rebuilding their home upon receipt of Allstate's guarantee to pay the additional $16,000.00 due under their policy. Mr. and Mrs. Hilley have exhausted all avenues in an effort to obtain the necessary funds to rebuild their home.. . . [emphasis in Hilley]'
 "A few days later, Frazier wrote the Hilleys, acknowledging receipt of their letter and stating that Allstate's agreement under the dwelling coverage provision of the policy was as follows: '[W]hen the amount already paid to the insured is spent toward the rebuilding of the house and cost of rebuilding begins to exceed this amount [then] I would pay a portion of the remaining amount and later pay another portion when the house was at a stage toward completion and could be verified. If this is not acceptable the only other offer I can make is according to the policy conditions in the policy."
562 So.2d at 186-87 (footnote omitted).
The trial court entered a summary judgment in favor of Allstate on all but one of the Hilleys' claims, and the Hilleys appealed. In reviewing that judgment, this Court explained:
 "This Court and Alabama federal district courts applying Alabama law have explicitly held that replacement cost provisions similar or identical to those provisions at issue here are valid and enforceable. See Huggins v. Hanover Insurance Co., 423 So.2d 147 (Ala. 1982); Blevins v. State Farm Fire Casualty Co., No. CV-86-DT-0114-M (N.D.Ala. Aug. 22, 1986) (Propst, J.); see, also, Cherokee Farms, Inc. v. Fireman's Fund Insurance Co., 526 So.2d 871 (Ala. 1988). In fact, the Allstate replacement cost/actual cash value provisions at issue here were held to be clear, unambiguous, and valid in Thompson v. Allstate Insurance Co., No. CV-87-0347-M (N.D.Ala. July 14, 1987).
 "In Huggins v. Hanover Insurance Co., supra, the defendant insurance company issued an insurance policy to the plaintiffs with a total replacement cost limit of $120,000. That policy, like the Allstate policy at issue here, provided that the insurer would 'pay no more than the actual cash value of the damage until actual repair or replacement is completed.' See 423 So.2d at 149. The insureds claimed that, even though they did not repair their home, they were still entitled to full replacement cost rather than the actual cash value that the insurer paid them. The trial court directed a verdict in favor of the insurer and this Court affirmed. In so holding, we stated that the insurance policy 'limits all replacement cost recovery . . . to actual cash value until repair or replacement is complete.' The Court further noted that '[p]rovisions like . . . those have been interpreted as providing a condition precedent to an insurer's duty to pay repair or replacement costs of an insured building. A party who has not *Page 1378 repaired or replaced his insured building has not complied with the condition precedent to recovery under the policy and so cannot recover.'
423 So.2d at 150. (Emphasis supplied [in Hilley I].)
 "Additionally, in Blevins v. State Farm Fire Casualty Co., supra, the district court was faced with a claim by the insureds that they should be able to recover the full replacement cost policy limits for the contents of their house, which were destroyed by fire. There, as here, the policy provided that replacement cost would be paid only after the replacement had been completed.
 "Judge Propst, citing Huggins v. Hanover Insurance Co., supra, held that, because the plaintiffs had not actually replaced the subject property in the time required by their policy, they had failed to meet a policy condition precedent and could not recover the replacement cost policy limits. In so holding, he noted:
 " 'Insurance policies which allow recovery of replacement costs often contain a provision requiring the insured to repair or replace the property within a specified or reasonable time. The policy issued to plaintiffs contained such language and courts have generally construed such a provision according to its plain meaning.'
 "Blevins, supra. See Cherokee Farms, Inc. v. Fireman's Fund Insurance Co., supra (noting that the policy required complete replacement of premises before actual cash value payment would be supplemented with replacement cost payment). See, also, Thompson v. Allstate Insurance Co., supra ('Allstate has no duty to advance the proceeds' to fulfill the replacement precondition); State Farm Fire Casualty Co. v. Ponder, supra, 469 So.2d 1262 at 1266 (Ala. 1985) ('what is contemplated is that, ordinarily, actual cash value will be less than replacement cost [as it was here]; thus, the insurer will first pay the lesser amount; and then, upon completion within 180 days after the loss, will pay the difference between actual cash value and replacement cost'). (Emphasis supplied [in Hilley I].)
 "Furthermore, a mere intention to replace does not trigger the insurer's replacement cost payment obligations. See, e.g., Blevins v. State Farm Fire Casualty Co., supra. Consequently, even though the Hilleys allegedly intended to replace their house, but claim that they could not afford to effectuate that rebuilding, they cannot overcome the clear and unambiguous terms of their Allstate policy that precluded any replacement cost payment prior to the completion of rebuilding.
 "We recognize the general rule that every contract carries with it an implied-in-law duty of good faith and fair dealing. Chavers v. National Security Fire Casualty Co., 405 So.2d 1
(Ala. 1981); see, also, Hoffman-LaRoche, Inc. v. Campbell, 512 So.2d 725 (Ala. 1987). This duty provides that neither party will interfere with the rights of the others to receive the benefits of the agreement. See Childs v. Mississippi Valley Title Ins. Co., 359 So.2d 1146 (Ala. 1978). We find no such interference here. We cannot allow the obligation of good faith and fair dealing to supply a term that adds something new or different to the rights and obligations to which the parties have expressly agreed or to vary clear contract terms. See, e.g., Metromedia Broadcasting Corp. v. MGM/UA Entertainment Co., 611 F. Supp. 415 (C.D.Cal. 1985); Snyder v. Howard Johnson's Motor Lodges, Inc., 412 F. Supp. 724 (S.D.Ill. 1976)."
Hilley I, 562 So.2d at 189-90.
This Court consequently affirmed the summary judgment as to the Hilleys' breach-of-contract and bad faith claims, holding: "Because the Hilleys failed to satisfy the policy's conditionprecedent, Allstate had no duty to advance the proceeds." Id.
at 190 (emphasis added). Hilley I thus effectively rebuts Ballard's challenge to the procedure involved in this case.
 II. Policy Definition
Closely related to this challenge is Ballard's contention that the Syndicate owed *Page 1379 
him a duty to include in the policy a specific definition of the phrase "cash value," because, he argues — and the majority of the Court agrees — the meaning given that phrase by the insurance industry varies from the definition commonly used. More specifically, Ballard insists that he "justifiably" failed to understand that "actual cash value" meant the value of his property, minus a deduction for depreciation, and that the Syndicate's use of the term in this sense without defining the term in the policy constituted policy fraud. I disagree with this argument, for the following reasons.
"Justifiable reliance" is a necessary element of any successful fraud claim. See Woodall v. Alfa Mutual Ins. Co.,658 So.2d 369 (Ala. 1995); Hicks v. Globe Life Accident Ins.Co., 584 So.2d 458 (Ala. 1991). However, Ballard's policy provided:
 "(a) The repairs, replacement or reinstatement (all hereinafter referred to as 'replacement') must be executed with due diligence and dispatch;
 "(b) Until replacement has been effected the amount of liability under this policy in respect of loss shall be limited to the actual cash value at the time of loss. . . ."
(Emphasis added.) In my view, subsection (b) provides ample,actual notice that cash value is not equivalent to the face amount of the policy.
Furthermore, this Court has long defined "actual cash value" in precisely the sense in which it is used in Ballard's policy. In Glens Falls Ins. Co. of New York v. Garner, 229 Ala. 39, 43,155 So. 533, 536 (1934), for example, this Court unequivocally stated: " 'Actual cash value' means, and can only mean, what the thing is worth in money, allowing for depreciation." (Emphasis added.) See, also, Livingston v. Auto Owners Ins.Co., 582 So.2d 1038, 1040 (Ala. 1991); Huggins v. Hanover Ins.Co., 423 So.2d 147, 151 (Ala. 1982) (" 'In a total loss, depreciation is deducted from replacement cost to determine actual cash value' "); Reliance Ins. Co. v. Substation ProductsCorp., 404 So.2d 598, 609 (Ala. 1981) ("Actual cash value means what the property is worth in money, allowing for depreciation"); see cases collected at 12 Ala. Digest Insurance
Key Nos. 499, 499(1).
Because "actual cash value" has been defined consistently in this Court's published opinions, Ballard's policy-fraud claim runs afoul of the well-established rule "that all persons are presumed to know the law and the legal meaning of termsemployed in establishing legal relations." Melton v. Ensley,421 S.W.2d 44, 53 (Mo.App. 1967) (emphasis added); see, also,Barber Pure Milk Co. v. Alabama State Milk Control Bd.,275 Ala. 489, 494, 156 So.2d 351, 355 (1963) (" '[a]ll men are charged as a matter of public policy with a knowledge of the law pertaining to their transactions' "); Birmingham Bar Ass'nv. Phillips Marsh, 239 Ala. 650, 656, 196 So. 725, 731 (1940) ("All men are charged as matter of public policy with a knowledge of the law pertaining to their transactions"); 31A C.J.S. Evidence § 132(1), at 245-52 (1964). This rule imputes to Ballard constructive knowledge of the definition of "actual cash value," as that term was used in the policy. He cannot be deemed to have been deceived by the absence of a definition of which he had constructive knowledge. Ballard's notice — actual, as well as constructive — as to the legal definition of the phrase "cash value" thus effectively negates any claim of justifiable reliance.
For these reasons, I conclude that the policy is not fraudulent per se. Consequently, I respectfully dissent.
[3] In Allstate Insurance Co. v. Hilley, 595 So.2d 873 (Ala. 1992) ("Hilley II"), this Court affirmed a judgment entered on a jury verdict for the Hilleys on a fraud claim against the insurer. However, the fraud claim was based on representations made to the Hilleys by the insurer's agent. Consequently, that case, and the theory on which it was based, afford no support for Ballard's "policy fraud" theory.