Wheatley, P.J.
This dispute arose when the defendant (Hingham) refused to pay the claim of the plaintiffs (Carmine and Lillian, the Russos) for additional proceeds under a fire insurance policy, to reimburse them, after a fire, for the purchase price of a “replacement” house. The trial judge awarded the Russos $12,833.53 in damages. Hingham then filed this Expedited Appeal, under Dist/Mun. Cts. R A D. A, Rule 8A
The facts, as we collect them from the findings of the trial judge and some stipulations by the parties, are as follows: There are three parcels of real estate that come into play in this case: 1. 6 Albert Road, Plymouth, 2. 499 Beach Street, Roslindale; and 3. 257 Cornell Street, Roslindale. The Russos and Alfred Balerna, Ms. Russo’s brother, bought the Abert Road property in 1981. It was a single-family summer cottage, and was the house that was insured by Hingham and was eventually destroyed by fire. In June 1991, they conveyed it to Michael J. Russo, the plaintiffs’ son, as trustee of Abert Road Estate Trust,[2] an irrevocable trust At the same time, Carmine and Lillian became personally liable on a mortgage loan on the property taken out by Michael, trustee, and, thus, had an insurable interest in the property. Womble v. Dubuque Fire & Marine Ins. Co., 310 Mass. 142, 144 (1941), 37 N.E.2d 263, and cases cited. See also, Littleton Indus., Inc. v. Peerless Ins. Co., 11 Mass. App. Ct. 814, 819 (1981), 420 N.E 2d 28. They had, however, neither legal nor equitable title to the property and, as of March 13,1997, the date of the fire, did not reside there.
Carmine and Lillian became the owners of 499 Beach Street in 1964 and used it until early 1994 as their primary residence. During this same period, Lillian’s father owned and lived with Lillian’s mother in the house at 257 Cornell Street Lillian’s father died in 1975[3] and her mother remained in the house until May of 1994, when she entered a nursing home. Carmine and Lillian lost the Beach Street property through foreclosure in 1993 and, in early 1994, moved into the Cornell Street house, where they have resided since. In January 1996, Lillian’s mother deeded the Cornell Street property to Lillian, and Lillian, in July, 1996, after her mother’s death, deeded it to Joseph Balerna and Eugene Balerna, trustees of the Balerna Family Trust.[4]
*18 On March 13, 1997, when the Albert Road property was occupied by Elaine Russo, Lillian and Carmine’s daughter, and Elaine’s boyfriend and two children, the property, insured by Hingham, was destroyed hy fire. The actual cash value, being the total cost of repair or replacement ($91,370.52) less depreciation ($13,507.47), was $77,863.05. This amount less the $500 deductible, $77,363.05, was paid promptly by Hingham to Carmine and Lillian and their mortgagees.[5] On December 19,1997, with no reconstruction of the building, the Albert Road property was sold in its as-is condition (land plus the shell of a burned-out house) for $25,000. A relevant part of the Hingham policy provides:
4(a) When the cost to repair or replace exceeds the lesser of $2,500 or 5% of the limit on the damaged building,[6] we do not pay more than the actual cash value until repair or replacement is completed... (Emphasis added.)
After the fire, on August 1,1997, the trustees of the Balema Family Trust deeded to Lillian the Cornell Street properly, where she had been living with her husband since early 1994. The total value of the house was $108,879. In that Lillian was one of six beneficiaries of the trust, she paid the other beneficiaries each $18,146.50, for a total of 5/6 of the value, or $90,732.50. Thereafter, within the time limits set in the insurance policy, she made a supplemental claim to Hingham for $12,833.53[7], alleging that, in purchasing the Cornell Street property, she was “replacing” the Abert Road properly. Aguing that the purchase of the Cornell Street property was not a “replacements under law or the terms of the policy, Hingham refused to make any additional payment We turn our attention to this issue.
Hingham’s appeal is based on the trial judge’s denial of five requested conclusions of law.[8] Essentially, they put into question whether the purchase of the Cor *19 nell Street property was a “replacement of the Albert Road properly which would entitle the plaintiffs to payment under their supplemental coverage claim. We conclude that it was not and reverse the trial judge.
The Russos argue that, under the replacement cost coverage endorsement in their policy, they should be reimbursed the difference between the actual cash value and the cost of the Cornell Street property, purchased to “replace” the Albert Road property. Hingham’s response is in three parts: 1. Purchase of a “replacement” house on a parcel of land other than the parcel on which the fire occurred does not qualify for coverage. 2. The purpose and function of the Cornell Street house was not similar to that of the Albert Road house, and its purchase is not, therefore, a “replacement,” as the word is commonly understood. 3. Because tiie Russos received $77,863.05 of proceeds and $25,000 for an Albert Road sale price, a total of $102,863.05, and bought the Cornell Street property for less ($90,732.50), they suffered no replacement loss.
With respect to Hingham’s first contention, there is no language in the policy in question that restricts a replacement in this manner. Moreover, there is no supporting case law. The few cases that are available as precedent make no such restriction. Main v. Cambridge Mutual Fire Ins. Co., 1995 Mass. App. Div. 114 (1995), Huggins v. Hanover Ins. Co., 423 So.2d 147, 150 (Ala. 1982), Conway v. Farmers Home Mutual Ins. Co., 31 Cal. Rptr. 2d 883, 26 Cal. App. 4th 1185 (1994), S and S Tobacco and Candy Company, Inc. v. Greater New York Mutual Insurance Company, 617 A.2d 1388 (Conn. 1992). Regarding Hingham’s second contention, The Main case, supra, holds that the replacement house, in order to qualify, must have the same function and purpose as the damaged house. Webster’s defines “function,” generally considered as a synonym of “purpose,” as “the action for which a... thing is specially fitted, used.” In the broad sense, it would seem, both houses had a similar function viz, for use as a residence; in the narrow sense, the houses are dissimilar, viz, a summer or secondary home as opposed to a primary residence. The court in Main, the first Massachusetts court to deal with this issue, applied the definition in the narrow sense, and held that the second house was not a replacement
As to their third contention, certainly, if all of the proceeds went to the Russos, they would not be entitled to indemnity under the policy, in that they had no loss, which leads us to the dispositive issue and facts in this case. Prior to the fire, the Russos transferred title of the Albert Road property to a trustee of an irrevocable trust They had neither legal nor equitable title to the property at the time of the fire. Their only connection to the property was an insurable interest, as opposed to an ownership interest, by virtue of their being personally obligated on the mortgage note. They received from Hingham proceeds equating the cash value of the property because the policy terms required it without condition. Their only entitlement to any further payment from Hingham is based on a condition that they expended monies for repair or replacement, that is that they suffered an actuad loss. There would be no recovery under the replacement coverage otherwise. “A contract of fire insurance is a contract of indemnity, so far as direct loss or damage is concerned... It is well settled that the principle on which damages are assessed in insurance cases is that of indemnity for the loss actually sustained.” Kingsley v. Spofford, 298 Mass. 469, 475 (1937). “The proceeds of an insurance contract are an indemnity for actual loss sustained by the insured.” (Emphasis added) Paluszek v. SafeCo Insurance Company of America, 517 N.E.2d 565 (Ill. App. 1 Dist. 1987). “[Hingham] is not required to reimburse [the Russos] for repairs if someone else suffered a pecuniary loss in effecting such repairs.” Id, at 568. “[T]he assured is only entitled to be put in the same condition pecuniarily that he would have been in if there had been no fire.” Kingsley, supra, at 475.
*20 From the facts before us, there is no question that the Russos spent nothing for repairs. It certainly could have been to their benefit to make repairs which would increase the value of the property securing their obligation. In the same sense, they could have paid to replace the Albert Road building, also to enhance their security. But they did neither. The owners of the Albert Road properly also did not replace the binned building. They sold it in an “as is” condition. Under this fact situation, the Russos had no obligation to buy a new or replacement building for the trustee. They can show no set of facts that indicates that they suffered any pecuniary loss as a result of the fire at the Albert Road property They would only have had a loss, if the mortgagee had foreclosed, realized a deficiency, and sued them and recovered on the promissory note. To allow the Russos to profit from their insurance would contravene the very fundamentals of insurance law. The “goal of indemnification [is to pay] for actual loss suffered.” “Indemnity against loss is the essence of a contract of insurance and the undertaking is personal to the insured. The policy is not an insurance of the specific thing without regard to the ownership but is a specific agreement of indemnity with the person insuring against such loss or damage as he may sustain.” Paluszek, supra, at 568.
For the foregoing reasons, we reverse the trial court judgment and order that judgment be entered in favor of Hingham Mutual Fire Insurance Co.
So ordered.

 Michael and the Russos’ other three children were the beneficiaries.

 In 1979, Lillian and her five siblings deeded their 1/2 interest in the Cornell Street property, which we assume they received as a result of their father’s death, to their mother.

 Lillian and her five brothers and sisters were the beneficiaries.

 It is not stated in the record how much of the insurance proceeds and the sale proceeds went towards the payment of the mortgage loan on the property for which the Russos were obligated. We assume that the mortgage loan was paid in full because there was a sale and there are no facts that show that the security interest for the Russos’ loan was shifted to the Cornell Street property.

 For the purposes of fifis appeal, we assume that this condition was met by file insured.

 Even though this amount is not the exact difference between the actual cash value and the Cornell Street purchase price, for the purpose of this appeal, we are treatingitassuch.

 “1. The evidence requires a finding that the Russos failed to repair or replace the building on the Abert Road property, a condition precedent to recovery under the policy’s replacement cost coverage. [Cases cited.]
2. The purchase by Lillian Russo of her siblings’ share of her primary residence in Roslindale is not a replacement under the insurance policy of a house in Plymouth which was not occupied by Lillian or Carmine Russo and in which neither had retained a legal or beneficial interest [Cases cited.]
3. The evidence requires a finding that the purchase by Lillian Russo of her siblings’ share of the residence at 257 Cornell Street, Roslindale, was not a replacement of the Abert Road, Plymouth, building. [Case cited.]
4 The evidence requires a finding that the Roslindale property did not serve the same function or purpose as the destroyed Plymouth property. [Case cited.]
5. The evidence requires a finding that Lillian Russo did not expend more in purchasing her siblings’ share in the Roslindale property ($90,739.50) than was received on account of the Plymouth property ($77,365.05 ACV payment for building plus $25,000 for land) and therefore she is not entitled to the replacement cost coverage even if the Roslindale properly is considered a replacement of the Plymouth property. [Case cited.]”